Thomas JASANY, Plaintiff-Appellant,

v.

## UNITED STATES POSTAL SERVICE, et al., Defendants-Appellees.

### No. 84–3134.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 17, 1985.
Decided Feb. 28, 1985.

16

Donald Weisberger, Elliott Lester, argued, Cleveland, Ohio, for plaintiff-appellant.

Dale F. Kainski, Asst. U.S. Atty., Alan J. Ross (FTS), argued, Cleveland, Ohio, Robert P. Henderson, Office of Labor Law, Chicago, Ill., Mary S. Elcano, U.S. Postal Service, Washington, D.C., for defendants-appellees.

Before KENNEDY, MARTIN and WELLFORD, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

This is an appeal from the judgment of the District Court in favor of the defendants in an employment discrimination case. The appellant, Thomas Jasany, alleges that his discharge from the United States Postal Service (post office) was based on handicap and sex discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, and the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* The case was submitted to the District Court on briefs and an extensive stipulation of the facts.

### Facts

Jasany was born with a mild case of strabismus, commonly known as crossed eyes. In September, 1976, having successfully passed the Letter Sorter Machine Vision Examination and other requirements for the position, he was hired for the position of Distribution Clerk Machine Trainee. His primary function in the position was to operate a mail sorting (LSM–ZMT) machine. Upon satisfactory completion of his probationary period, in January, 1977, he was promoted to Distribution Clerk, Part-Time Flexible (PTF), Machine Qualified. Although he continued to operate the LSM–ZMT, in this position he was required to perform whatever other duties he was assigned by the post office, including those duties performed by manual distribution (not machine qualified) clerks. As his job title suggests, he was also required to work an irregular schedule of up to 40 hours per week, although 40 hours was not guaranteed.

Post office employees are hired for specific entry level positions. They take examinations for those positions and their names are placed on a register in order of examination scores. Machine operators and manual distribution clerks are hired from separate registers. PTF operators bid for full time positions as they open up. If no bids are received, the senior PTF operator is converted to full time. Operators who bid or are assigned to full time positions are subject to a "lock-in" period. Prospective trainees are advised of these conditions of employment before hire.

After three months as a PTF machine operator, Jasany began to develop eye strain, headaches, and excessive tearing. Between March and August, 1977, several letters were exchanged between Jasany's physician, Dr. Kamen, and post office officials, in which Dr. Kamen indicated that Jasany's symptoms were the result of the detailed visual work required to operate the LSM–ZMT in combination with his strabismus. Prior to March, 1977, and after his removal from the LSM–ZMT, Jasany's vision and health were unaffected by his congenital condition. He participated fully in school, work, sports, and recreational activities, as well as all other normal daily activities of every kind whatsoever without limitation.

On July 29, 1977, Jasany refused an order to operate the LSM–ZMT, for which he was suspended from work for seven days. After returning to work, he again refused assignments to operate the machine on August 9, 10, and 11. Based on these incidents, Jasany's supervisor requested that he be given a Fitness for Duty Examination. On August 22, 1977, he was given such an examination and found to be disqualified for further employment as an LSM–ZMT operator. Consequently, he was notified that he was to be discharged, effective September 30, 1977.

On August 26, 1977, the American Postal Workers Union (APWU) filed a grievance on Jasany's behalf. At arbitration, the APWU argued that the Distribution Clerk PTF position was two-fold, encompassing both manual distribution clerk and machine distribution clerk, and that Jasany's eye strain was a job-related injury entitling him to reassignment regardless of seniority under ¶ 13 the National Agreement. The arbitrator ruled in favor of the post office, finding that Jasany was specifically hired as a machine operator, and that his eye strain was not an injury entitling him to reassignment under the union contract.

In 1978, Jasany filed a formal complaint with the EEOC alleging that he had been

discriminated against because of a physical handicap. In 1981, an EEOC Attorney Examiner ruled in his favor. The post office rejected the Attorney Examiner's findings in a final agency decision of no discrimination. Jasany filed a second complaint with the EEOC in 1979 alleging discrimination on the basis of sex. This complaint was set for hearing after the filing of the instant lawsuit, and at the request of the post office administrative procedures were thereby suspended.

Jasany makes three assertions of error. First, with respect to his claim of handicap discrimination, he contends that the District Court erred in its conclusion that he was not a "qualified handicapped person" within the meaning of 29 U.S.C. § 794, as defined by 29 C.F.R. § 1613.703. Second, with respect to his sex discrimination claim, he argues that the District Court erred in considering the nondiscriminatory reason for his discharge proffered by the post office because it was neither offered in evidence nor probative. Finally, Jasany asserts that the District Court abused its discretion in denying his Fed.R.Civ.P. 60(b) motion, based on the discovery of an internal post office memorandum that he claims was deliberately withheld from the court and himself by the post office and which mandates judgment in his favor.

### I. Handicap Discrimination

■ To assert a claim that he was discriminated against because of a physical handicap, Jasany must satisfy the threshold requirement that he is a handicapped person as defined by the statute. A handicapped person is one who "has a physical or mental impairment which *substantially* limits one or more such person's major life activities." 29 U.S.C. § 706(7)(B)(i) (emphasis added). "Major life activities" is defined in 29 C.F.R. § 1613.702(c) as "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and *working*" (emphasis added). The District Court reasoned that Jasany's strabismus impaired his ability to work on the LSM–ZMT, which qualified as a major life activity, and held that he was a handicapped person within the meaning of 29 U.S.C. § 706(7)(B). The appellees do not question that Jasany's strabismus qualifies as a "physical or mental impairment." They do, however, challenge the conclusion that Jasany's impairment meets the second part of the definition.[1]

In *E.E. Black, Ltd. v. Marshall*, 497 F.Supp. 1088 (D.Hawaii 1980), the court carefully considered the definition of a handicapped individual in 29 U.S.C. § 706(7).[2] It concluded that an impairment that interfered with an individual's ability to do a particular job, but did not significantly decrease that individual's ability to obtain satisfactory employment otherwise, was not *substantially* limiting within the meaning of the statute. 497 F.Supp. at 1099–1100; *see also Salt Lake City Corp. v. Confer*, 674 P.2d 632, 636–37 (Utah 1983) ("*one particular job for one particular employer* cannot be a 'major life activity'" (emphasis in original)) (interpreting identi-

---

1. Jasany contends that the post office cannot challenge this and other findings of the District Court because it did not cross-appeal. However, the post office does not have to cross-appeal to argue that there are alternative grounds that support the judgment below. *United States v. American Ry. Express Co.*, 265 U.S. 425, 435–36, 44 S.Ct. 560, 563–564, 68 L.Ed. 1087 (1923).

2. The court analyzed the quoted language from subsection (B)(i) in conjunction with that in subsection (A), which defines "handicapped individual" as "any individual who (i) has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment and (ii) can reasonably be expected to benefit in terms of employability from vocational rehabilitation services...." Subsection (B) was added as part of the Rehabilitation Act Amendments of 1974, § 111(a), Pub.L. No. 93–516, 88 Stat. 1617. The stated purpose of this amendment in the legislative history of the Act was to broaden the definition of "handicapped individual" beyond the employment context in part by inclusion of the phrase "major life activities." *See* S.Rep. No. 93–1297, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 6373, 6388–89, 6413–14. There is nothing in the legislative history relevant to the question of the degree to which a handicap must affect an individual's employment opportunities to "substantially limit" the "major life activity" of working.

cal language in state statute). The *Black* court suggested a number of factors relevant to determining whether an impairment substantially limited an individual's employment potential—the number and type of jobs from which the impaired individual is disqualified, the geographical area to which the individual has reasonable access, and the individual's job expectations and training. 497 F.Supp. at 1100–01.

*Black* was an appeal from an ALJ's determination that an individual, refused employment as an apprentice carpenter because of a congenital back anomaly, was not handicapped because his impairment did not affect his employability generally. Although the appellant was not functionally limited, the refusal of employment was based on the ground that his impairment made him more prone to injury. The ALJ had reasoned that focusing on particular fields rather than on employability in general would lead by way of illustration to the anomolous result that individuals too slow to play professional football or too short to play basketball would be able to surmount the initial burden of demonstrating that they were handicapped individuals in challenging their exclusion from those jobs. The *Black* court responded that the ALJ's concerns were misplaced, since those individuals would not be protected by the Act, not because their "impairment" did not substantially limit their employability, but because they were not capable of performing the particular job in question and hence were not "qualified handicapped individuals" within the meaning of 60 C.F.R. § 60–741.2. *Id.* at 1099–1100; *see also* 29 C.F.R. § 1613.702(f). The court concluded that the policy of the defendant employer

must be ascribed all employers offering the same or similar jobs, and that the appellant's impairment constituted, *for him*, a substantial handicap to employment when the factors listed above were applied. *Id.* at 1102.

*Black* represents the most comprehensive examination by a court to date of the § 706(7) definition of "handicapped." While we agree with the *Black* court's conclusion that in applying the definition, the impairment at issue must be evaluated with reference to the individual job seeker, that court did not adequately analyze the focus and relationship of the definitional elements of the statute—impairment, substantial limitation of a major life activity,[3] and qualified person. *See generally* Haines, E.E. Black, Ltd. v. Marshall: *A Penetrating Interpretation of "Handicapped Individual" for Sections 503 and 504 of the Rehabilitation Act of 1973 and for Various State Equal Employment Opportunity Statutes*, 16 Loy.L.A.L.Rev. 527 (1983) (discussing ambiguity of statutory definition of "handicapped").

The *Black* court was right in rejecting the ALJ's illustrations of people incapable of playing professional sports, but for the wrong reason. Characteristics such as average height or strength that render an individual incapable of performing particular jobs are not covered by the statute because they are not *impairments*.[4] The distinction can be an important one. The burden is on the plaintiff to establish the existence of an impairment that substantially limits a major life activity as an element of the plaintiff's prima facie case.[5] Once a prima facie case has

---

**3.** The court in *Salt Lake City Corp. v. Confer* treated "substantially limiting" and "major life activity" as distinct statutory qualifications. 674 P.2d at 636. However, at least with respect to the major life activity of "working", they constitute an inseparable whole. An impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one.

**4.** *Cf. Neeld v. American Hockey League*, 439 F.Supp. 459 (W.D.N.Y.1977) (preliminary injunction granted under New York Human

Rights Law in favor of plaintiff, a hockey player with sight in only one eye, challenging league by-law declaring players with vision in one eye three-sixtieths of normal or under ineligible).

**5.** In *Pushkin v. Regents of University of Colorado*, 658 F.2d 1372 (10th Cir.1981), the court held that the test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), for claims of employment discrimination under Title VII,

been presented, the burden shifts to the defendant employer to demonstrate that challenged criteria are job related and required by business necessity, and that reasonable accommodation is not possible. *Prewitt v. United States Postal Service*, 662 F.2d 292, 306–08 (5th Cir.1981). If the plaintiff fails to establish a prima facie case, it is unnecessary to address the question of reasonable accommodation.

■ In the instant case, the parties stipulated that Jasany's condition had never had any effect whatsoever on any of his activities, including his past work history and ability to carry out other duties at the post office apart from operation of the LSM–ZMT. Based upon this stipulation and in light of our analysis of the statutory definition, we find that the District Court erred as a matter of law in finding that the appellant was a handicapped person within the meaning of 29 U.S.C. § 706(7).[6] Consequently, the appellant failed to establish a prima facie case of handicap discrimination.

■ Even if Jasany were a handicapped person within the purview of the statute, the District Court did not err in concluding that he was not qualified to perform the duties for which he was hired by the post office. A "qualified handicapped person" is one "who, with or without reasonable accommodation, *can perform the essential functions of the position in question.*" 29 C.F.R. § 1613.702(f) (emphasis added). Despite the fact that technically the job description for the position Jasany held at time of discharge included a broad range of duties that he could still perform besides operation of the LSM–ZMT, the finding of the District Court that he was hired primarily to operate the LSM–ZMT was not clearly erroneous. The post office was not required to *accommodate* Jasany by *eliminating* one of the essential functions of his job. *Cf. Southeastern Community College v. Davis*, 442 U.S. 397, 413, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979) ("Section 504 imposes no requirement ... to lower or to effect substantial modifications of standards to

---

must be modified in handicap discrimination cases. That test requires the plaintiff to establish a prima facie case by showing that he belongs to a protected class and was qualified for the position sought, "but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094 (footnote omitted). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the rejection, which in turn shifts the burden back to the plaintiff to prove that the asserted reason is pretextual. The *Pushkin* court observed that handicap discrimination cases are unique in that handicapped persons are expressly rejected for employment on the basis of their handicap, whereas in Title VII cases characteristics such as race or sex are never expressly at issue as legitimate justifications for the plaintiff's rejection. 658 F.2d at 1385–86. For this reason, the court held that the first two steps of the *McDonnell Douglas* test must be modified in handicap cases as follows:

1) The plaintiff must establish a prima facie case by showing that he was an otherwise qualified handicapped person *apart from* his handicap, and was rejected under circumstances which gave rise to the inference that his rejection was based solely on his handicap;

2) Once plaintiff establishes his prima facie case, defendants have the burden of going forward and proving that plaintiff was not an

otherwise qualified handicapped person, that is one who is able to meet all of the program's requirements *in spite of* his handicap, or that his rejection from the program was for reasons other than his handicap....

658 F.2d at 1386–87 (emphasis in original).

The *Black* court's error in the professional athlete hypotheticals is not serious, because those individuals probably could not show that they were qualified for the position in question even apart from their "handicap." However, in the more common case likely to arise, in which there are no special and highly demanding skill requirements in addition to the basic physical prerequisites, this error would be significant, in that it would shift the burden to the employer to prove that the individual was *not* qualified to perform the job with reasonable accommodation in spite of his "handicap."

6. It may be that Jasany's strabismus is so minor that it does not rise to the level of a physical impairment. However, the distinction between "impairment" and "significantly limiting a major life activity" as separate elements of the statutory definition is less important than that between "handicapped" and "qualified handicapped person," since the burdens of proof on the respective parties are unaffected by the approach taken to the former.

accommodate a handicapped person." (footnote omitted)).

There is nothing in the stipulated facts before the District Court directed to whether the LSM–ZMT itself could be modified to accommodate Jasany's condition, nor did he suggest in his briefs that such an effort should have been made.[7] Nevertheless, perhaps because of the wording of the regulation, the court addressed the issue, holding that to require such modification would be "highly impractical" and "impose an undue hardship" on the post office. Although Jasany objects on appeal that this finding was groundless, absent evidence to the contrary the court's conclusion was a reasonable one based upon the description of the LSM–ZMT and its operation, which were in the record.

As far as curtailing his hours on the LSM–ZMT, Jasany offered no evidence that such a schedule would have alleviated his symptoms. The Fitness for Duty Examination found that Jasany was disqualified from operating the LSM–ZMT. The post office also contends that scheduling flexibility was an essential function of the PTF position. *See Daubert v. United States Postal Service,* 733 F.2d 1367, 1372 (10th Cir.1984). Once credible evidence has been presented that the employer could not reasonably accommodate the plaintiff, the plaintiff may not remain silent, but must come forward with evidence concerning his individual capabilities to rebut the employer's evidence. *Prewitt,* 662 F.2d at 308.

Finally, Jasany contends that he could have been assigned to the job of "allied man" on the LSM–ZMT, which involved supply and removal of mail from the machine and required no visual scanning. First, there was nothing in the record pertaining to the existence of such a position. More importantly, once again this suggestion confuses accommodation with elimination of an essential function. Visual acuity

was an explicit and prominent requirement of the job for which Jasany was hired.

An argument made with respect to both the handicap and sex discrimination claims is that the appellant was entitled to a reassignment under the National Agreement because his eye strain was a job-related injury. He was rehired by the post office as a mail handler under the auspices of the Office of Workers' Compensation Programs (OWCP) Rehabilitation Program on December 12, 1981. He argues that the arbitrator's ruling on the question of injury was based in part on the arbitrator's belief that he had not filed a workers' compensation claim, which in fact he had, and that the fact that he was paid benefits by OWCP from 1977–81 and was rehired by the post office is conclusive evidence that he had suffered an injury. The post office has argued that once it was determined that Jasany's condition was a physical disability rather than a job-related injury, it was barred by the job bidding and seniority provisions of the National Agreement from reassigning him from the position of machine to manual distribution clerk. Jasany contends that the facts recited above constitute unrebutted evidence that the post office's reasons for refusing to reassign him were pretextual.

OWCP documents in the record include a letter in which OWCP informed Jasany of its determination that he was wrongly awarded and paid compensation because his disability was NOT job-related. He appends a later letter from OWCP to his reply brief that was not part of the record below, which he seems to contend alters the earlier finding. However, that letter merely informs him of the determination by OWCP that he will not have to repay the benefits mistakenly paid from 1977–81. Consequently, Jasany was not entitled to reassignment because of a job-related injury. An employer cannot be required to accommodate a handicapped em-

---

7. In quoting the regulation on reasonable accomodation, 29 C.F.R. § 1613.704, Jasany emphasized by underlining only the portion dealing with job restructuring: " '(b) ... (2) *job restruc-* *turing, part-time or modified work schedules,* acquisition or modification of equipment or devices....' (emphasis added)." Plaintiff's Trial Brief and Memorandum of Law at 10.

ployee by restructuring a job in a manner which would usurp the legitimate rights of other employees in a collective bargaining agreement. *Daubert*, 733 F.2d at 1369–70; *see also Bey v. Bolger*, 540 F.Supp. 910, 927 (E.D.Pa.1982) (requirement that post office grant light duty status to employees with less than the five years seniority required by National Agreement would be unreasonably burdensome).

## II.  Sex Discrimination

The basis of Jasany's claim of sex discrimination is that two female postal workers, Dalpiaz and Hlad, employed in his job classification who became physically disqualified from operating the LSM–ZMT were reassigned to the position of manual distribution clerk. The post office contended, and the District Court so found, that their cases were distinguishable from Jasany's. Dalpiaz had over five years seniority, which entitled her to additional job protection under the National Agreement, and Hlad was transferred as the result of a settlement of her grievance.

Jasany contends on appeal that "the stipulation of facts ... are completely bereft of the asserted U.S.P.S. reason that the District Court found valid," *i.e.*, that Jasany was terminated and Dalpiaz and Hlad were not because of the result of grievance procedures undertaken pursuant to the National Agreement, and hence it should not have been considered by the District Court.[8] However, the circumstances of Dalpiaz's and Hlad's discharge and reinstatement and the pertinent supporting documents were in the record, as was the decision of the arbitrator against Jasany. The reasons for the post office's actions in each case are clearly articulated. It is Jasany that has brought up these cases in making an assertion of disparate treatment. It is not necessary that the post office prove that there was any explicit connection between its treatment of his

case and theirs, which seems to be what he is asserting was required.

Jasany also asserts that the arbitration decision against him is not a legitimate reason for his discharge because it was "after acquired." However, he misinterprets the significance of the grievance procedures and the District Court's statement that their outcomes constitute a legitimate nondiscriminatory reason for the reassignments of Hlad and Dalpiaz but not himself. Grievance procedures necessarily will follow the action of the employer to which the grievant objects. It is not the *result* of the grievance procedure that is the *reason* the employer acted; rather, the result of the procedure is *evidence* that the employer's action was or was not justified. While the outcome of an arbitration decision in favor of the employer is not dispositive in a Title VII suit of whether there was discrimination, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), "an arbitration decision in favor of the employer is sufficient to carry the employer's burden of *articulating* 'some legitimate, nondiscriminatory reason for the employee's rejection.'" *Becton v. Detroit Terminal of Consolidated Freightways*, 687 F.2d 140, 142 (6th Cir.1982), *cert. denied*, 460 U.S. 1040, 103 S.Ct. 1432, 75 L.Ed.2d 791 (1983) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)) (emphasis in original).

The post office contends on appeal that the District Court erred in finding that Jasany had established a prima facie case of discrimination. In a case of reverse discrimination, the presumption that the circumstances which normally make out a prima facie case are indicative of discrimination is not available, absent a showing that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Parker v. Balti-*

8. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 9, 101 S.Ct. 1089, 1094 n. 9, 67 L.Ed.2d 207 (1981) ("An articulation not admitted into evidence will not suffice. Thus,

the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel.").

*more & Ohio R.R. Co.*, 652 F.2d 1012, 1017 (D.C.Cir.1981) (footnote omitted). It is unclear whether the District Court applied the stricter standard appropriate in deciding whether Jasany had made out a prima facie case. In any event, the court did address the ultimate factual issue, whether the post office intentionally discriminated against Jasany on the basis of sex, *see United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983), and its conclusion, that Jasany failed to produce any evidence that the post office had discriminated against him or any other male because of sex, is not clearly erroneous.

### III. Rule 60(b) Motion

Jasany based his rule 60(b) motion on a post office "regional instruction, filing no. 719," pertaining to reclassification of the PTF Distribution Clerk Machine position as simply a PTF Distribution Clerk. He claimed that the effect of this document would be that he would be regarded as a general post office employee entitled to reassignment, and that the position of the post office presented to the District Court, that he was hired specifically to operate the LSM–ZMT, in light of the fact that it knew or should have known about this directive, amounted to misrepresentation.

To be entitled to relief from judgment pursuant to rule 60(b), appellant was required to show either that the memorandum at issue could not have been discovered by due diligence under subsection (2), or that the adverse party was guilty of fraud or misrepresentation under subsection (3). The court held that neither showing was made. Such a ruling is subject to review for an abuse of discretion. *Peake v. First Bank & Trust Co.*, 717 F.2d 1016, 1020 (6th Cir.1983). Jasany's arguments to the District Court pertaining to the relevance of the document, incorporated by reference in his brief on appeal, are irrelevant to whether the District Court abused its discretion in ruling against him on the due diligence and misrepresentation questions. Jasany offers no argument nor is

there any indication in the record that the District Court abused its discretion in ruling as it did. Moreover, if anything, the memorandum in question reinforces the position of the post office. It is clear from that memorandum that, although the PTF manual and PTF machine clerks shared the common classification of PTF Distribution Clerk, the two positions remained distinct in that machine clerks were specially designated as such on the roster of PTF Distribution Clerks, and had specific bidding rights and obligations to accept assignment to full time machine operator openings.

The judgment of the District Court is affirmed.