George William PRIDEMORE, Plaintiff,

v.

**LEGAL AID SOCIETY OF DAYTON, Defendant.**

No. C–3–84–881.

United States District Court,
S.D. Ohio, W.D.

Nov. 19, 1985.

George William Pridemore, Middletown, Ohio, pro se.

Neil F. Freund, Jane M. Lynch, Attys. at Law, Dayton, Ohio, for defendant.

DECISION AND ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 15); PLAINTIFF'S MOTION TO VACATE DISCOVERY ORDER DEEMED MOOT (DOC. # 10); DEFENDANT'S MOTION TO DISMISS DEEMED MOOT (DOC. # 11); PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT OVERRULED (DOCS. # 16, 17); JUDGMENT TO DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, District Judge.

This case comes before the Court for resolution of the Motion for Summary Judgment filed on May 22, 1985, by Defendant Legal Aid Society of Dayton (Doc. # 15). Plaintiff, a lawyer licensed to practice law in the State of Ohio who is representing himself in this action, has not responded to Defendant's motion. Fed.R. Civ.P. 56(e) provides that when a motion is filed and properly supported, the opposing parties may not rest upon their pleadings, but must present sufficient evidence to demonstrate the existence of a genuine issue of material fact. At the same time, Rule 56(e) in no way alters the basic standard stated in Fed.R.Civ.P. 56(c) for granting summary judgment. A party is never *required* to respond to a motion for summary judgment in order to prevail by securing a Court order overruling the motion, since the burden of establishing the non-existence of a material factual dispute always rests with the movant. *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir.1979), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

Plaintiff, as mentioned *supra*, is a lawyer. In response to advertisements placed by Defendant in certain legal publications, on April 25, 1983, Plaintiff sent Defendant a two-page letter in which he inquired about the possibility of employment as a staff attorney. (Pridemore deposition, p. 34–35 and Exh. A). Defendant then sent Plaintiff a letter, requesting his law school transcript, writing samples and a statement from Plaintiff explaining his interest in employment with Defendant. Attached to Defendant's letter was a standardized form which stated that Defendant was an equal opportunity employer and which provided applicants with spaces to indicate their sex or race. The form did not ask applicants to supply information about handicaps. Plaintiff believes that he made the following notation on the EEO form: "I am handicapped under EEOC guidelines." (Pride-

more deposition, p. 41).[1] He submitted this EEO form to Defendant along with the other requested application materials.

Plaintiff called Defendant's office "on and off" from May through August, 1983. (Pridemore deposition, p. 40). He was told during these calls that candidates were being interviewed and that he would be contacted if any more information was required from him. In August of 1983, during the last of these phone calls, a member of Defendant's staff informed Plaintiff that they were still interviewing candidates for the position of staff attorney. Plaintiff at that point had not been rejected for employment by Defendant. Plaintiff informed the representative of Defendant with whom he spoke during that final conversation that he would be filing a complaint of handicap discrimination by Defendant with the Ohio Civil Rights Commission (OCRC). (Pridemore deposition, p. 42). Plaintiff did file such a complaint in the fall of 1983. Sometime thereafter, Plaintiff received a letter from Defendant, rejecting him from employment. Plaintiff sent a letter in response to the Defendant's Executive Director, Dalma Grandjean, declaring that he had cerebral palsy, accusing Defendant of handicap discrimination, and offering to take a polygraph examination to substantiate his claim. (Pridemore deposition, Exh. B).

The OCRC conducted an investigation of Plaintiff's charge, and found no reasonable cause to believe that Defendant had engaged in handicap discrimination. Either shortly before or shortly after the OCRC's determination, Plaintiff wrote a letter to the Dayton office of the OCRC, and sent a copy to Ms. Grandjean. The letter expressed Plaintiff's dissatisfaction with the OCRC's finding, and stated that Ms. Grandjean had lied to the OCRC in the course of its investigation of Plaintiff's complaint. (Pridemore deposition, Exh. E). Plaintiff subsequently filed suit against Defendant in this Court, alleging handicap discrimination by Defendant in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (West Supp.1976–84).[2]

In *Jasany v. United States Postal Service*, 755 F.2d 1244, 1249–50 & n. 5 (6th Cir.1985), the Sixth Circuit quoted with approval the test for claims of handicap discrimination outlined by the Tenth Circuit in *Pushkin v. Regents of University of Colorado*, 658 F.2d 1372 (10th Cir.1981). In *Pushkin*, the first two steps of the method of evaluating Title VII claims set forth by the Supreme Court in cases such as *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972), was adapted to cases of handicap discrimination as follows:

(1) The plaintiff must establish a *prima facie* case by showing that he was an otherwise qualified handicapped person *apart from* his handicap, and was rejected under circumstances which give rise

---

1. Dalma Grandjean, Executive Director of Defendant, states in her affidavit that this EEO form, as executed by Plaintiff, has been lost. (Doc. # 15, Affidavit of Dalma Grandjean, ¶ 5). Ms. Grandjean's recollection is that Plaintiff's EEO form included roughly the following notation: "I may be mentally handicapped, but am not sure." *Id.* For purposes of Defendant's Motion for Summary Judgment, the Court accepts Plaintiff's version of the notation on the EEO form as the best approximation of what the form indicated. A sample EEO form is attached as Exhibit 1 to Ms. Grandjean's affidavit.

2. 29 U.S.C. § 794 provides as follows:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

to the inference that his rejection was based solely on his handicap;

(2) Once plaintiff establishes his *prima facie* case, defendants have the burden of going forward and proving that plaintiff was not an otherwise qualified handicapped person, that is one who is able to meet all of the program's requirements *in spite of* his handicap, or that his rejection from the program was for reasons other than his handicap. . . .

755 F.2d at 1250 n. 5.

The initial difficulty in this case, the Court finds, is determining the handicap or handicaps relevant to Plaintiff's claim of discrimination. Cerebral palsy is the sole handicap pled in Plaintiff's Complaint. Plaintiff emphasized in a Motion to Vacate (Doc. # 10) that "cerebral palsy is the sole handicap condition alleged in the Complaint." Yet, Plaintiff apparently did not indicate to Defendant that he was afflicted by cerebral palsy. Rather, Plaintiff recalls that he indicated on his EEO form that he was "handicapped under EEOC guidelines." [3] In his deposition, Plaintiff seemed to allude to three possible bases for his claim of handicap discrimination: cerebral palsy, a history of mental illness, and a learning disability.[4] Plaintiff's final pretrial order (Doc. # 21) mentions no particular handicap as the basis for his claim of handicap discrimination. One witness named in Plaintiff's final pretrial order is listed as competent to testify to Plaintiff's learning disability.

In short, cerebral palsy is the only handicap pled by Plaintiff, but two other handicaps have received brief mention in the record. Although *pro se* litigants are to be treated indulgently in the scrutiny of their pleadings, Plaintiff is not a typical *pro se* litigant. . He is a lawyer whose position in this case hinges both implicitly and explicitly upon his competence to practice law. This observation having been made, the Court believes nonetheless that Plaintiff's mental illness and learning disability cannot properly be ignored. In the interests of justice and in a fair and complete treatment of the record, these two conditions will be considered, in addition to Plaintiff's cerebral palsy, as possible predicates for Plaintiff's claim of handicap discrimination.

(A) *Whether Plaintiff is a "Handicapped Individual" Within the Meaning of 29 U.S.C. § 706(7)(B).*

[1] The first component of Plaintiff's *prima facie* case of handicap discrimination requires the finding that Plaintiff is a "handicapped individual" falling within the protected class of Section 504 of the 1973 Rehabilitation Act. The relevant statutory definition is contained in 29 U.S.C. § 706(7)(B), which provides that a "handicapped individual" is one who

(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

The "major life activities" referred to in Section 706(7)(B) are in turn defined in 45 C.F.R. § 84.3(j)(2)(ii) as "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."

The Court is satisfied that, were cerebral palsy the sole handicap to be answered in this case, summary judgment would have to be entered against Plaintiff on the basis

---

**3.** In an angry handwritten letter dated January 23, 1984, written *after* Plaintiff had filed a charge with the OCRC, Plaintiff declared to Defendant that he suffered from cerebral palsy. (Pridemore deposition, Exh. B).

**4.** The Court refers to this exchange between Defendant's counsel and Plaintiff during Plaintiff's deposition:

Q. And it's your claim that Dayton Legal Aid Society discriminated against you because you had cerebral palsy. Is that correct?

A. Yes, on the basis of handicaps.
Q. Any other handicap?
A. Well, I would say also learning disabilities qualifies as a handicap. Whether I have any problems with psychiatric, it would probably be from the stigma associated with prior treatments. I don't find that really too much of a handicap at present.

(Pridemore deposition, p. 70, lines 2–12).

that he fails to fall within the protected class of Section 706(7)(B). Plaintiff testified at his deposition that he has a "faint" case of cerebral palsy. (Pridemore deposition, p. 70). As the *Jasany* court made clear, however, an impairment must *substantially* limit a person's major life activity or activities before that person can qualify as a "handicapped individual." Plaintiff's testimony at his deposition was that cerebral palsy does not impair his ability to walk and talk. He further testified that the impact of his cerebral palsy upon his motor functions is discernible only with the use of sophisticated diagnostic equipment. (Pridemore deposition, p. 70). This condition, which Plaintiff himself characterizes as "mild," cannot be found to substantially limit one or more of Plaintiff's major life activities as required by Section 706(7)(B)(i).

Plaintiff's cerebral palsy also fails to render him a "handicapped individual" under the remaining two subsections of Section 706(7)(B). Although Plaintiff could qualify as handicapped under Section 706(7)(B)(ii) if he could demonstrate a record of a substantially limiting impairment, Plaintiff's doctors did not even diagnose his condition of cerebral palsy until 1984. (Pridemore deposition, p. 66–67). Nor is there any indication that prior to 1984 he suffered from a "substantially limiting" condition which was only later diagnosed as cerebral palsy. Finally, there is no indication in the record that, as required by Section 706(7)(B)(iii), Defendant regarded Plaintiff as "having such an impairment," that is, as suffering from a "substantially limiting" condition of cerebral palsy.[5] For these reasons, the Court finds no dispute as to a material fact to interfere with the conclusion that Plaintiff does not qualify as a "handicapped individual" on the basis of cerebral palsy.

■ As mentioned *supra*, the Court believes the interests of justice to also require consideration of Plaintiff's learning disability and past mental illness as possible bases for his qualification as a "handicapped individual" under 29 U.S.C. § 706(7)(B). With respect to Plaintiff's learning disability, Plaintiff testified at his deposition that he has undergone sensory integration therapy intermittently since the diagnosis of this condition in 1980. (Pridemore deposition, p. 68). Plaintiff indicated his uncertainty as to the symptoms or problems created by this dysfunction, positing only that "I probably have problems reading. Have to compensate time-wise for problems like that." (Pridemore deposition, p. 81).

Application of the standards of 29 U.S.C. § 706(7)(B) to the learning disability thus described by Plaintiff indicates that no genuine issue of material fact prevents this Court's conclusion that Plaintiff fails to qualify as a "handicapped individual" on the basis of his learning disability. Any reading or comprehension impediment created by Plaintiff's sensory disintegration function certainly, by Plaintiff's own account, does not substantially limit one or more of Plaintiff's life activities. As such, Plaintiff cannot qualify as a "handicapped individual" pursuant to 29 U.S.C. § 706(7)(B)(i).

In considering whether Plaintiff can be said to have a record of a substantially limiting impairment due to his learning disability, 29 U.S.C. § 706(7)(B)(ii), the Court notes that Plaintiff's condition was not di-

---

**5.** The legislative history of 29 U.S.C. § 706(7)(B)(iii) reveals that this test for a "handicapped individual" was intended to cover persons believed to suffer from a condition which they did not in fact have, or persons with a mental or physical condition which did not substantially limit their major life activities, but who were believed to be so limited by their condition. S.Rep. No. 93–1297, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Adm. News at 6373, 6389–6390. Neither Plaintiff's notation on his EEO form nor his threat of an

OCRC handicap charge during his final telephone call to Defendant create a material factual question as to the latter part of the test, that is, whether Defendant erroneously believed that Plaintiff suffered from a condition of cerebral palsy which substantially limited his major life activities. Plaintiff makes no claim that Defendant erroneously perceived him as having a condition which he did not have, but rather that Defendant took action against him on the basis of his condition of cerebral palsy.

agnosed until 1980, that is, after he had completed law school and had begun to prepare for the Ohio bar examination. Nothing in the record indicates that Plaintiff's dysfunction has, in the period since its diagnosis, risen to the level that it substantially limited one or more of Plaintiff's major life activities. Given Plaintiff's successful completion of his academic requirements, including law school, there is no indication in the record for a theory that Plaintiff suffered prior to 1980 from a substantially limiting condition which was only subsequently diagnosed as a learning disability.

Finally, there is no indication that Defendant regarded Plaintiff as suffering from a substantially limiting impairment, as required by 29 U.S.C. § 706(7)(B)(iii). Plaintiff testified at his deposition that he never informed Defendant of his learning disability. (Pridemore deposition, p. 71).[6] For these reasons, no genuine issue of material facts exists as to Plaintiff's failure to qualify as a "handicapped individual" due to his learning disability.

■ There are questions of material fact, on the other hand, as the Court proceeds to consider Plaintiff's qualification as a "handicapped individual" on the basis of his past mental illness. As mentioned *supra*, on April 25, 1983, Plaintiff sent Defendant a two page letter requesting employment. That letter included the following passage:

> Also, as you will notice on my law school transcript, I withdrew from the Spring semester of 1979. I wish this could have been avoided because the course offerings excited me: Law and Social Change, Welfare Litigation, Employment Discrim-

ination and Debtor-Creditor (Bankruptcy). Personal tragedy struck two of my closest friends. One was murdered, while the other later decided that life was not worth living. I sunk into a depression that required hospital treatment. Nearly every employer except VISTA has discrimminated (sic) against me because of this. If this fact causes you any problems, please use this letter as my personal authorization to contact my doctor, Dr. Harry Whitely, Professor of Psychiatry, Northwestern University Medical School. He can tell you what he told VISTA.

(Pridemore deposition, Exh. A, p. 1–2).

Drawing all inferences favorable to Plaintiff, as the nonmovant, Plaintiff's hospitalization for depression in 1979 indicates that his mental illness substantially limited a major life activity, that of being able to function and to care for himself. Thus, this passage in Plaintiff's letter to Defendant creates a genuine issue of material fact as to whether, as required by Section 706(7)(B)(ii), Plaintiff had a record, at the time of his application to Defendant, of an impairment which substantially limited one or more of his major life activities.[7]

Given this material factual dispute as to Plaintiff's qualifications under Section 706(7)(B)(ii) due to a history of mental illness, the Court needs not, and does not, consider whether any additional bases exist for Plaintiff's qualification as a "handicapped individual." It instead becomes necessary to consider the remaining two components of Plaintiff's *prima facie* case in order to determine whether summary judgment may be entered in favor of De-

---

6. Plaintiff seems to suggest in his deposition that he might have communicated the existence of his learning disability to Defendant by virtue of his indication on the Defendant's EEO form that he was handicapped under EEOC guidelines. (Pridemore deposition, p. 71). This Court cannot accept that such a notation by Plaintiff on the EEO form, without more, is sufficient to raise a genuine issue of material fact that Defendant not only perceived Plaintiff as suffering from a learning disability, but as suffering from a learning disability which sub-

stantially limited one or more of his major life activities.

7. The legislative history of Section 706(7)(B)(ii) reveals Congress' intent that the protection of Section 504 be extended to those individuals with a record of a substantially limiting impairment, even if the individual could be shown to have recovered in whole or in part from that handicapping condition. S.Rep. 93–1297, 93rd Cong., 2d Session., *reprinted in* 1974 U.S.Code Cong. & Adm.News 6373, 6388.

fendant and against Plaintiff. The Court again notes that Plaintiff does not qualify as a "handicapped individual" by virtue of his condition of cerebral palsy, the sole handicap condition pled by Plaintiff.

(B) *Whether Plaintiff Was "Otherwise Qualified" for the Position of Staff Attorney.*

Assuming Plaintiff to be a "handicapped individual," the second prong of Plaintiff's *prima facie* case under Section 504 is whether Plaintiff was "otherwise qualified" for Defendant's staff attorney position. The Supreme Court has defined an "otherwise qualified handicapped individual" as "one who is able to meet all of a program's requirements in spite of his handicap," provided that none of those requirements are "unreasonable and discriminatory." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 412–13, 99 S.Ct. 2361, 2367, 2370, 60 L.Ed.2d 980 (1979). Regulations promulgated by the Department of Health and Human Services define a "qualified handicapped person" as one "who, with reasonable accommodation, can perform the essential functions of the job in question." 45 C.F.R. § 84.3(k)(1).

Defendant contends that Plaintiff was not asked to interview for the staff attorney position because, wholly apart from any handicap(s) claimed by him, his application materials indicated that he was not "otherwise qualified" for the job. Defendant's Executive Director, Dalma Grandjean, avers that one hundred fifty-seven individuals applied for the job, and that sixty-three applicants were selected for an interview. (Grandjean Affidavit, Doc. # 15, Exh. 1, ¶ 4). She states that the position of staff attorney, which involved the conduct of major litigation projects, required both good judgment and the ability to effectively communicate. *Id.,* ¶ 3. Ms. Grandjean explains in her affidavit that Plaintiff's April 25th letter revealed an unfocused, rambling style of communication, and that it contained mistakes of both spelling and grammar. *Id.,* ¶ 6, 8. The resume submitted by Plaintiff indicated no work experience subsequent to 1981, and only limited experience prior to 1981. *Id.,* ¶ 6.

For those reasons, Defendant's position is that Plaintiff was not "otherwise qualified" despite the fact that Plaintiff possessed a law degree from an accredited institution and that he had passed the Ohio bar examination. As an initial proposition, the Court agrees that the organizational and intellectual demands of the position of staff attorney may be considered in the determination of whether a handicapped professional is "otherwise qualified." *See Pushkin v. Regents of University of Colorado,* 658 F.2d at 1385–90 (consideration of whether a psychiatrist, who suffered from cerebral palsy was "otherwise qualified" included not only whether he possessed necessary academic degrees, but whether he possessed the experience, intellect and emotional disposition to be a successful psychiatrist); *see also Upshur v. Love,* 474 F.Supp. 332, 342 (N.D.Cal.1979) (blind candidate for position as school administrator found not "otherwise qualified" due to his lack of experience and familiarity with school administration).

The skills and attributes which Defendant puts forth in its definition of the staff attorney it sought to hire appear no more arbitrary and discriminatory than those characteristics contemplated at trial by the *Pushkin* and *Upshur* courts. The Court does not believe, however, that it can conclude that no genuine issues of material fact exist as to whether or not Plaintiff was "otherwise qualified," given the dependence of this determination upon Defendant's own good faith, yet subjective requirements for the position which it sought to fill. Given the existence of factual disputes as to this issue, the Court must proceed to the final component of Plaintiff's *prima facie* case in order to determine whether summary judgment is to be entered in favor of Defendant and against Plaintiff.

(C) *Whether Plaintiff was Rejected Under Circumstances Giving Rise to an Inference of Handicap Discrimination.*

Assuming Plaintiff to have been an "otherwise qualified handicapped individual

apart from his handicap," the remaining prong of Plaintiff's *prima facie* case considers whether Plaintiff was rejected under circumstances giving rise to the inference that his rejection was based solely on his handicap(s). *Jasany,* 755 F.2d at 1250 n. 5. The Court finds Defendant to have established the absence of a genuine issue as to any material facts susceptible of an inference that Plaintiff was rejected by Defendant solely on the basis of his handicap(s). With this demonstration as to Plaintiff's inability to make out the final prong of his *prima facie* case of handicap discrimination, summary judgment must be entered in favor of Defendant and against Plaintiff.

The facts and circumstances put forward by Defendant as to Defendant's receipt of Plaintiff's April 25th letter and its evaluation of Plaintiff's application materials raise no inference, in this Court's opinion, that Plaintiff's rejection was based "solely on his handicap(s)." Plaintiff sent in application materials to Defendant which included a notation on the EEO form that he was handicapped under EEO guidelines and which included mention that he had received hospital treatment for depression. During the next four months, Plaintiff was not asked by Defendant to interview for the position which he sought. That Plaintiff became frustrated and upset, as would any applicant for any position, is understandable. Ninety-three individuals besides Plaintiff, however, also failed to be selected for an interview. The Court does not believe that Plaintiff's bare mention of or allusion to a handicap should mean that he, without more, is entitled to maintain a cause of action based upon handicap discrimination.

The only other circumstance in the record meriting scrutiny is the fact that Defendant's formal rejection of Plaintiff for the position for which he had applied occurred sometime after Plaintiff had threatened to file, and then filed a charge of handicap discrimination with the OCRC. To accept that this sequence of events raises an inference of discrimination would be to allow an individual to bootstrap into a *prima facie* case of handicap discrimina-

tion simply by filing an OCRC charge before the potential employer had acted or had the opportunity to act. Few individuals, whether job seekers or not, relish waiting for a desired outcome. Yet the lawsuit which Plaintiff seeks to maintain in this Court ought not to be a remedy simply for such frustration.

This is not to say or imply that this Court and other courts ought not to be sensitive to conduct which hints at decisions improperly based on a person's real or perceived handicaps. In *Pushkin,* for example, an inference of handicap discrimination was drawn from the fact that plaintiff's rejection for a residency position at a university hospital was based upon attributes which plaintiff was *believed* to possess due to his cerebral palsy, rather than upon plaintiff's own ability to function. While obviously there was less contact between Plaintiff and Defendant herein than took place between the parties in *Pushkin,* their course of dealings, and the very sparseness of their dealings during the application process, do not in themselves raise any inference that Plaintiff was rejected by Defendant solely on the basis of his handicap(s).

A party opposed to a motion for summary judgment is required by Fed.R.Civ.P. 56(e) to do more than rely upon conclusory allegations to defeat the motion. Having considered the two allegations raised by Plaintiff in his deposition, the Court does not believe Plaintiff to have put forward any facts in support of his claim of discrimination which would create a genuine issue for trial.

■ Plaintiff stated in his deposition that the OCRC investigator who pursued Plaintiff's claim of handicap discrimination had relayed to Plaintiff, on four different occasions, certain statements which Dalma Grandjean had allegedly made to the OCRC concerning her reasons for not selecting Plaintiff for an interview. Plaintiff contends that the statements made by Ms. Grandjean were false, thus raising an inference of handicap discrimination. (Pride-

more deposition, p. 48–49, 71–72).[8] The Court notes that, in order for Plaintiff's statement to be admissible, the statements of both Ms. Grandjean and the OCRC investigator must either be found not to be hearsay or be found to fall within an exception to the hearsay rule. *Hunters Intern. Mfg. v. Christiana Metals Corp.*, 561 F.Supp. 614, 617 (E.D.Mich.1982), *aff'd* 725 F.2d 683 (6th Cir.1983); *see* Fed.R.Evid. 805. If the two statements cannot be so characterized, then Plaintiff's statement is hearsay which cannot be considered in ruling upon Defendant's Motion for Summary Judgment. Fed.R.Civ.P. 56(e); *Adickes v. Kress & Co.*, 398 U.S. 144, 159 & n. 19, 90 S.Ct. 1598, 1609 & n. 19, 26 L.Ed.2d 142 (1970).

Pursuant to Fed.R.Evid. 801(d)(2)(D), Dalma Grandjean's statements to the OCRC investigator could be found not to be hearsay. Plaintiff offers these statements against Defendant. Ms. Grandjean, an agent of Defendant, made these remarks during her employment by Defendant. Her comments about Plaintiff's application for employment would fall within the scope of her duties as Executive Director. Such statements, then, would not be hearsay.

A similar rationale does not embrace the OCRC investigator's alleged recounting to Plaintiff of Dalma Grandjean's remarks; such a recounting of Ms. Grandjean's statements would be hearsay, offered for the truth of said statements. Nor do either of the potentially relevant exceptions to the hearsay rule appear applicable. Fed.R.Evid. 803(1) excludes a declarant's present sense impression from the operation of the hearsay rule. To come within this hearsay exception, a statement describing an event must be made while the declarant was perceiving the event, or immediately thereafter. The requirement that the statement be made contemporaneously, or nearly so, with perception of the event is the basis of the belief that such a

statement is trustworthy. 4 Weinstein and Berger, Weinstein's Evidence, ¶ 803(1)[01]. There is nothing in the record to indicate that the OCRC investigator, on each of four separate occasions, repeated Ms. Grandjean's statements to Plaintiff immediately or almost immediately after Ms. Grandjean had made those statements to him. Without a reliable indication as to the time frame involved, Rule 803(1) cannot cover the statements of the OCRC investigator to Plaintiff.

Fed.R.Evid. 803(3) provides the following exception to the hearsay rule:

> Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of the declarant's will.

There is no indication in Plaintiff's deposition that the OCRC investigator recounted Ms. Grandjean's statements in order to explain his (the investigator's) intent to rely upon those statements in reaching a conclusion upon the merits of Plaintiff's OCRC complaint. Nor can Ms. Grandjean's statement somehow be taken as an indication of the OCRC investigator's own mental feelings about Plaintiff's allegations of discrimination. The final phrase of Rule 803(3), moreover, was designed to preclude admission of the OCRC investigator's statement in order to prove the *contents* of his conversation with Ms. Grandjean. *Marshall v. Commonwealth Aquarium*, 611 F.2d 1, 3–5 (1st Cir.1979). Thus, again, the OCRC investigator's remarks to Plaintiff, as recounted by Plaintiff in his deposition, are hearsay not covered by any exception. As such, they cannot be considered herein.

---

**8.** Plaintiff states that Dalma Grandjean made four false statements to the OCRC: (1) that Plaintiff's application was not timely submitted; (2) that Plaintiff had not indicated on the EEO form that he was handicapped; (3) that Plaintiff's writing samples were of poor quality; and (4) that Plaintiff's resume was not current. (Pridemore deposition, p. 48–49).

Plaintiff also alleged in his deposition that an inference of discrimination is raised by Defendant's failure to employ any handicapped individuals. (Pridemore deposition, p. 72, 74). This statement, unsupported by any figures or other evidence, is also insufficient to create a genuine factual dispute herein. Even if gross statistical disparities would be sufficient alone to constitute *prima facie* evidence of a pattern or practice of handicap discrimination, *see Teamsters v. United States*, 431 U.S. 324, 340 n. 20, 97 S.Ct. 1843, 1856 n. 20, 52 L.Ed.2d 396 (1977), there has been no such showing by Plaintiff in this case.

For the reasons aforesaid, Defendant's Motion for Summary Judgment (Doc. # 15) is sustained. As Plaintiff did ultimately provide the medical authorizations sought by Defendant, Defendant's Motion to Dismiss and Alternatively, for Sanctions, is moot, as is Plaintiff's Motion to Vacate Discovery Order. (Docs. # 10, 11). Plaintiff's Motions for Default Judgment (Docs. # 16, 17) are overruled. The Court cannot agree that default judgment against Defendant is warranted by virtue of its delay of several days, due to confusion of this case with another filed by Plaintiff, in filing its Answer. Nor does this Court agree that default judgment is warranted due to the delay in Defendant's identification of its witnesses.

Based on the reasons aforesaid, judgment is entered in favor of Defendant and against the Plaintiff herein.

The above captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.