Julius SZALAY, Plaintiff,

v.

YELLOW FREIGHT SYSTEM, INC., Defendant.

No. 5:95 CV 0130.

United States District Court, N.D. Ohio, Eastern Division.

June 20, 1996.

Robert J. Zavesky, Linda U. Elliott, Daniel G. Kirschenbaum, Cleveland, OH, Margaret A. Wegener, International Total Services, Inc., Cleveland, OH, for Plaintiff.

Vincent Joseph Tersigni, James D. Kurek, Buckingham, Doolittle & Burroughs, Akron, OH, for Yellow Freight Systems, Inc.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Julius Szalay brings this action alleging that Yellow Freight System, Inc. discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq. ("ADA"), and O.R.C. § 4112.02, by failing to reasonably accommodate his disability. Yellow Freight now moves this Court for summary judgment. For the reasons set forth below, this Court grants Yellow Freight's motion for summary judgment.

### I.

Beginning in July, 1981, Julius Szalay worked for Yellow Freight as a journeyman mechanic. As such, Szalay performed two main duties. Like all other mechanics employed by Yellow Freight, he was rotated between the periodic maintenance ("PM") shop, and the fuel lanes, where trucks are checked and prepared for departure.

While working in June, 1992, Szalay fell from a ladder and injured his right knee. After undergoing arthroscopic surgery, Szalay was put on restricted duty by his doctor. He was allowed to perform all of his duties as a mechanic except work in the fuel lanes. After six months of this arrangement, with only occasional brief assignments in the fuel lanes, Yellow Freight again scheduled Szalay to work a full shift in the fuel lanes. The bending and climbing involved in fuel lane work aggravated Szalay's knee, and as a consequence he was unable to perform fuel lane duties.

Szalay was then temporarily assigned to a clerical position, through a program designed by Yellow Freight for employees who have been injured on the job and are in the recovery process. In September, 1993, Szalay's physician certified that Szalay had reached maximum medical improvement. Because he was still unable to work in the fuel lanes, Yellow Freight relieved Szalay of his duties as journeyman mechanic. Szalay was placed on Yellow Freight's seniority list, making

him eligible to return to his former position should his condition improve.

Szalay's condition remains unchanged. He is able to perform all functions involved in his former position, except work in the fuel lanes, which requires excessive bending and climbing for an extended period of time. Since his termination by Yellow Freight, he has been able to engage in all forms of routine work and recreation, and he is successfully employed as a full time maintenance person. Szalay considers himself able to perform the duties of a mechanic, as long as he is not required to engage in repeated bending and climbing.

Szalay alleges that he is a disabled person under the Americans with Disabilities Act, and that Yellow Freight has discriminated against him because of his disability. Yellow Freight asserts that Szalay does not qualify as a disabled person, and that Yellow Freight is therefore entitled to judgment as a matter of law.

## II.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . .

The nature of materials properly presented in a summary judgment pleading is set forth in Federal Rule of Civil Procedure 56(e):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an ad-

verse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.,* 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

## III.

The Americans with Disabilities Act provides that employers shall not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to maintain a claim under § 12112, the plaintiff must establish

that: (1) he has a disability; (2) he is an otherwise qualified individual; and (3) the defendant has failed to make a reasonable accommodation. *Jasany v. United States Postal Service,* 755 F.2d 1244 (6th Cir.1985).

In addressing Szalay's ADA claim, the Court first considers whether Szalay has a disability. According to the ADA, a disability consists of "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). *See Jasany,* 755 F.2d at 1249; *Dean v. The Veterans Administration,* 89CV2357, 1995 WL 605838, 1995 U.S. Dist. LEXIS 8782.[1] Thus, in order to avoid summary judgment, Szalay must produce specific facts to demonstrate that a genuine issue remains for trial as to whether he has an impairment and whether that impairment substantially limits a major life activity. *Jasany,* 755 F.2d at 1250.

The EEOC regulations implementing Title I of the ADA provide a definition for physical · impairment which includes "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: ... musculoskeletal ..." 29 C.F.R. § 1630.2(h)(1). The term impairment "cannot be divorced from its dictionary and common sense connotation of a diminution in quality, value, excellence or strength." *de la Torres v. Bolger,* 781 F.2d 1134, 1138 (5th Cir.1986). Szalay's physician testified that Szalay's knee injury has a permanent, negative effect on his bending and climbing capabilities. Because Szalay's condition so diminishes his abilities, it is a physical impairment as defined by the EEOC regulations. *See Elstner v. Southwestern Bell Telephone Co.,* 659 F.Supp. 1328 (S.D.Tex.1987) (holding that plaintiff's knee injury was considered an impairment because it prevented pole-climbing).

Once the Court determines that an individual suffers from a physical impairment, the Court must determine whether that impairment substantially affects a major life activity. *Jasany,* 755 F.2d at 1248. The regulations list three factors to be considered in determining whether an impairment so limits a major life activity:

(i) the nature and severity of the impairment;

(ii) the duration or expected duration of the impairment; and

(iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

Courts have been clear on the importance of "substantial" and "major" in the definition of disability. *Forrisi* 794 F.2d at 933–4. "A physical condition or limitation is not considered an impairment or handicap unless it places an individual so far outside the norm as to make it impossible or unusually difficult for that individual to perform work that could be done by most other people." *Cook v. State of Rhode Island,* 783 F.Supp. 1569, 1574 (D.R.I.1992), *aff'd,* 10 F.3d 17 (1st Cir.1993).

While considering the ADA factors, a court must determine whether an impairment is so severe that an individual cannot "take care of the normal activities of daily living." *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir.1995). In *Dutcher,* where it was necessary for the plaintiff to avoid heavy lifting, the court found that because she was nevertheless able to carry out most normal life tasks, her impairment did not substantially limit any major life activity. *Id.* at 726.

Similarly, in *Elstner,* the plaintiff was unable to perform the pole-climbing aspect of his job because of a knee injury. The court held that while his injury was an impairment, because he was able to handle all other as-

---

**1.** It has also been established that ADA standards are analogous to those used under the Rehabilitation Act. *Bolton v. Scrivner,* 36 F.3d 939, 942 (10th Cir.1994), *cert. denied,* 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995); *Chandler v. City of Dallas,* 2 F.3d 1385, 1391 (5th Cir.1993), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994). The Rehabilitation Act was established before the ADA, and Congress intended that the relevant case law already interpreting the handicap requirement of the Rehabilitation Act be used in the interpretation of the disability requirement of the ADA. *Bolton,* 36 F.3d at 943.

pects of his job as well as other jobs, and he could engage in normal recreational activities, his knee injury did not make him a disabled individual. *Elstner,* 659 F.Supp. at 1342.

Szalay asserts that he is substantially limited "in the major life activities of squatting, bending, climbing, twisting, sitting, and walking." He must therefore show that this limitation somehow renders him incapable of performing normal life tasks.

Szalay's physician has testified that Szalay's knee condition is a permanent injury, which will continue to affect his ability to bend and climb. However, his physician has also stated that while his ability to perform such activities is diminished, he is able to carry out all other functions associated with a position as a mechanic, as well as other positions. In fact, Szalay himself asserts that he is capable of performing all duties aside from the continuous bending and climbing associated with work in the fuel lanes.

Szalay has testified that he is currently employed as a full time maintenance person, and that he is capable of carrying out normal activities outside of work, such as mowing the lawn and maintaining his house. Szalay's physician testified that while Szalay's movement is more limited than it once was, he is able to function normally "as long as he doesn't exert himself." Szalay can perform the aspects of his former job which require bending and climbing, as long as he limits such activity to short periods of time. While Szalay alleges that he is limited in the major life activities of bending, climbing, sitting and standing, the evidence that he produces indicates only that he is limited in one aspect of one job. This does not constitute a substantial limitation on a major life activity. *See Elstner,* 659 F.Supp. at 1342; *Dutcher,* 53 F.3d at 727. Thus, this Court finds that Szalay does not qualify as a disabled person under the ADA.[2] Accordingly, Yellow Freight is entitled to judgment as a matter of law on his ADA claim.

### IV.

Jurisdiction in this case is based solely on the existence of a federal question, and this Court has jurisdiction over the state law claim only insofar as it is "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. 1367(a). A district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3). "[I]f the federal claims are dismissed before trial even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *See also Williams v. City of River Rouge,* 909 F.2d 151, 157 (6th Cir. 1990). Because Yellow Freight's motion for summary judgment as to Szalay's federal claim has been granted, it is appropriate for this Court to dismiss, without prejudice, Szalay's state claim as well.

### V.

For the foregoing reasons, this Court grants Yellow Freight's motion for summary judgment as to Szalay's 42 U.S.C. § 12112 claim, and dismisses, without prejudice, Szalay's state claim.

This Order is final and appealable.

---

**2.** This Court need not determine whether Szalay is "otherwise qualified," or whether Yellow Freight provided Szalay with a reasonable accommodation. *See Jasany,* 755 F.2d at 1250.