**Jose R. FUENTES, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**Civ. No. 92–1658(SEC).**

United States District Court, D. Puerto Rico.

Jan. 23, 1997.

case, with claims against Aberdale, Grande and Berkshire in Count One, and against Aberdale and Grande in Count Two.

Pedro J. Varela–Fernández, Cayey, PR, for Plaintiff.

Fidel A. Sevillano–Del–Rio, Asst. U.S. Atty., San Juan, PR, Nancy F. Janes, U.S. Postal Serv., Windsor, CT, for Defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is defendant's motion for summary judgment (**Docket # 35**). After a careful analysis of the parties' argument and applicable law, defendant's motion is **GRANTED.**

Plaintiff Jose R. Fuentes brought this action against the United States Postal Service ("Postal Service") alleging discrimination based upon race and reprisal under Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000 et seq., and handicap under the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. (Second Amended Complaint, ¶¶ 1, 6, 7, 9). Moreover, plaintiff alleges that defendant deprived

him of his free speech and due process rights under the First and Fourth Amendments to the United States Constitution. Id., ¶¶ 1, 10. Plaintiff alleges jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and 5 U.S.C. § 7703(b)(2).

Plaintiff seeks reinstatement, expungement of his personnel records, reasonable accommodation, back pay and other benefits, as well as an order from the Court compelling defendant to abide by the Rehabilitation Act an other statutes related to plaintiff. He also seeks preferential consideration for promotions, as well as $500,000.00 in compensatory damages. Complaint ¶¶ A, B, C, D, H. The plaintiff also seeks an injunction to prevent "withdrawing duly approved qualifications from plaintiff's personnel file" and to prevent harassment and persecution against him. Id., ¶¶ E, F. Plaintiff seeks a jury trial on the "non-equitable claims." Complaint, ¶ J.

On February 17, 1995, the Court held a hearing and heard the parties' respective arguments on defendant's motion for summary judgment. **(Docket # 43)** Pursuant to the Court's order and with plaintiff's consent, the Court dismissed plaintiff's claims under 28 U.S.C. § 1331, 28 U.S.C. § 1343, 5 U.S.C. § 7703(b) and the First and Fifth Amendments to the Constitution of the United States. **(Docket # 44)** Accordingly, the only remaining claims are those under Title VII of the Civil Rights Act and those under the Rehabilitation Act.[1] We proceed to discuss these claims.

---

1. We note that plaintiff's claims in the present case have been preceded by a plethora of administrative claims and their concomitant appeals. Although the findings and rulings of these administrative forums are not binding upon the Court, they provide a helpful context within which to elucidate the present controversy.
   1) **Case No. 1–L–0007–7** (race discrimination and reprisal) (settlement agreement);
   2) **August 3, 1988 plaintiff's request for reinstatement of complaint** (reinstated);
   3) **Case No. 1–L–003–89** (discrimination based on handicap and reprisal for prior EEOC complaints) (agency finding of no discrimination—plaintiff did not appeal);
   4) **Complaint of March 31, 1989** (improper investigation by EEOC officer) (Agency finding of improper conduct) (no appeal);

## Applicable Law/Analysis

### Plaintiff's Title VII Claim

The Supreme Court has clearly established the burdens of proof for claims of employment discrimination pursuant to Title VII. In *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), it held that the "Title VII Plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.' "

Once plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for the employment decision. If the employer is able to produce such a reason, the burden then shifts back to the plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973).

The Postal Service alleges that it removed plaintiff from his duties due to his repeated failure to attend scheduled fitness for duty examinations, his unauthorized absences, and his inability to perform his job due to the medical restrictions he claimed.

---

5) **Case No. 1–L–0011–89** (Complaint of Discrimination based on mental handicap and reprisal) (Dismissal of Complaint for Failure to Prosecute) (no appeal);
6) **Case No. 1–L–1006–90** (Discrimination based on mental handicap and reprisal) (Dismissal of Complaint for Failure to Prosecute) (Agency decision affirmed by Merit Systems Protection Board);
7) **Complaint for Unjustified Removal** (Arbitrator's Decision finding removal was for just cause) (Agency decision affirmed by Merit Systems Protection Board) See Docket # 35, Defendant's Statement Pursuant to Rule 311.12 Frank Girau's Statement Under Penalty of Perjury, ¶¶ 1–29.

Declaration of Bernabe Baerga, ¶ 32, Attachment 22 (hereinafter "Baerga Dec.") An arbitrator affirmed this removal action in a decision dated August 21, 1990 (Declaration of John C. Alberts, ¶ 15, Attachment 9 ("Alberts Dec."). "An arbitration decision in favor of the employer is sufficient to carry the employer's burden of articulating some legitimate, nondiscriminatory reason for the employee's rejection." *Jasany v. United States Postal Service*, 755 F.2d 1244, 1252 (6th Cir. 1985) (citing *Becton v. Detroit Terminal of Consolidated Freightways*, 687 F.2d 140, 142 (6th Cir.1982), *cert. denied*, 460 U.S. 1040, 103 S.Ct. 1432, 75 L.Ed.2d 791 (1983)).

When plaintiff began to submit medical documentation indicating that he was restricted from performing aspects of his job as a distribution/window clerk, the Postal Service scheduled him for a fitness-for-duty examination on November 12, 1988. Baerga Dec., ¶ 16, Attachment 10. Pending the outcome of the examination, the Postal Service accommodated plaintiff's requests for light duty on a temporary basis, since no light duty was available at the Aguadilla Post Office. Baerga Dec., ¶¶ 15, 24, Attachment 9. Plaintiff refused to report for the fitness-for-duty examination on November 12, 1988, and on two later occasions March 9, 1989 and May 23, 1989. Plaintiff noted that he could not attend the initial evaluation since his wife had to attend a conference on that date. However, he did not attempt to reschedule the appointment due to the scheduling conflict. Baerga Dec., ¶ 17, Attachment 11; Docket # 38, Jose Fuentes' Statement Under Penalty of Perjury, ¶ 42 (hereinafter "Fuentes' Sworn Statement")

On March 9, 1989, plaintiff argues that he and his attorney had concluded that pursuant to their interpretation of the Employee and Labor Relations Manual, he did not have to attend the examination, and accordingly he did not go to the appointed examination. Baerga Dec., 26, Attachment 19, Fuentes Sworn Statement, ¶ 51. Finally, on May 23, 1989, Mr. Fuentes failed to appear without providing the Postal Service with advance notice of his absence. Baerga Dec., ¶ 30. Fuentes claims that he refused to be examined by a doctor who was not Board certified.

Defendant argues that management had the prerogative to send plaintiff for a fitness-for-duty examination. Sections 864.31 and 864.32 of the Postal Service's Employee and Labor Relations Manual (ELM) provide for the use of fitness for duty examinations by postal managers at any time to determine whether an employee can perform the duties which his position entail. Alberts Dec., ¶ 10, Attachment 5. Furthermore, section 341.2 of the Personnel Operations Manual (EL–311) provides that the Postal Service must request a fitness-for-duty evaluation if, after a reasonable period of limited duty, the employee is unable to perform the full duties of his job and continues to provide medical evidence of his inability to perform the regularly assigned duties. Alberts Dec., ¶ 6, Attachment 2. Section 342.52 of the EL–311 confirms the mandatory nature of the request for a medical assessment when an employee claims he is unable to perform the full duties of his position; such provision states that management must refer him for a fitness-for-duty examination. Alberts Dec., ¶ 8, Attachment 3.

Defendant also claims that as a bargaining unit employee, plaintiff was covered by the terms of the National Agreement, which incorporates the various postal handbooks and manuals such as the ELM and the EL–311, and plaintiff was required to report for the medical examinations which the Postal Service had scheduled for him. Baerga Dec., ¶ 32, Alberts Dec., ¶ 12, Attachment 7. An employee's failure to report for a fitness for duty examination without a just reason is just cause for disciplinary action. As noted by section 343.34 of the EL–311, "repeated refusal is grounds for separation." Alberts Dec., ¶ 9, Attachment 4. Even if plaintiff did not agree with the request, he had an obligation to attend, pursuant to section 666.5 of the ELM, which requires employees to obey the instructions of their supervisors and then file a protest. Alberts Dec., ¶ 11, Attachment 6.

Accordingly, defendant was justified in issuing a removal action based on plaintiff's failure to attend his fitness-for-duty examinations. The Eight Circuit Court of Appeals has noted in *Risner v. United States Depart-*

*ment of Transportation,* 677 F.2d 36, 38 (8th Cir.1982):

> the fitness for duty examination is a useful procedure to determine an employee's competency to perform his duties, and we agree with those courts which have held that failure to submit to such an examination, when there are good reasons for directing an employee to submit to it, is insubordination and can justify discharge.

With regards to plaintiff's inability to perform his duties, plaintiff continued to submit medical reports to the Postal Service indicating restrictions which could not be met within the framework of his window and distribution Clerk Position. (Baerga Dec., ¶¶ 20, 22, 28) Since plaintiff refused to submit to the fitness for duty exams scheduled by his employer to determine his ability to work, the Postal Service concluded, pursuant to plaintiff's own medical admissions, that he was unable to perform his required duties.

As for the third charge of plaintiff's absence without proper authorization, there is no dispute that plaintiff did not report to work from February 27, 1989 until he was terminated from the Postal Service. Plaintiff did not request leave from his position during this period, and thus his absence was unauthorized. Baerga Dec., ¶ 27. The Courts have consistently held that disciplinary action based on an employee's excessive unscheduled absences is appropriate. The Court of Appeals of the D.C. Circuit noted: "an agency is inherently entitled to require an employee to be present during scheduled work times and, unless an agency is notified in advance, an employee's absence is disruptive to the agency's efficient operation." *See also Wimbley v. Bolger,* 642 F.Supp. 481, 484 (W.D.Tenn.1986) aff'd, 831 F.2d 298 (6th Cir. 1987) ("nothing in either postal or applicable federal regulations prohibits the Postal Service from disciplining an employee for unscheduled absenteeism.") In view of the above discussion, the Court finds that the Postal Service has presented a legitimate non-discriminatory reason for discharging plaintiff.

Since defendant has proffered such a non-discriminatory reason, plaintiff must now show that such reason was a pretext for the alleged discrimination.

A careful scrutiny of Mr. Fuentes' affidavit, on which he relies substantially in his opposition to summary judgment, fails to disclose any evidence indicating that the employer's adverse action was prompted by discriminatory motives. In fact, plaintiff admitted in his affidavit that he failed to show up for the three required fitness for duty evaluations requested by the Postal Service, on November 12, 1988, March 9, 1989 and May 23, 1989. (Plaintiff's Affidavit, ¶¶ 41, 42, 50, 51, 54, 55). He also acknowledges that an arbitrator dismissed his appeal of his removal from his position on August 20, 1990. (Id., ¶¶ 58–60) A careful review of the arbitrator's opinion bolsters the Court's conclusion that defendant's actions were appropriate. Alberts Dec., ¶ 15. Attachment 9) Even granting all reasonable inferences to plaintiff, plaintiff has failed to establish that the Postal Service's reasons were a pretext for discrimination.

Accordingly, since plaintiff has failed to establish that defendant's actions against him were motivated by discriminatory reasons, plaintiff's Title VII claim must be **DISMISSED.**

### Plaintiff's Claim of Handicap Discrimination Pursuant to the Rehabilitation Act

Plaintiff's discrimination claim, due to his mental disability, is governed by the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq., which reads:

> No otherwise qualified individual with a disability in the United States … shall, *solely by reason of her or his disability,* be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. (Emphasis supplied) 29 U.S.C. § 794(a).

█ To establish this claim, plaintiff must make a threshold showing of a *prima facie* case by proving that he was a handicapped

person within the meaning of the Act; that he was an otherwise qualified handicapped person; and that the agency's action were taken solely based on his handicap. *Taub v. Frank*, 957 F.2d 8, 10–11 (1st Cir.1992).

The regulations promulgated by the EEOC define "handicapped person" as one who:

1) has a physical or mental impairment which substantially limits one or more of such person's major life activities,

2) has a record of such an impairment, or

3) is regarded as having such an impairment.

29 C.F.R. § 1614.203(a). "Major life activities" include functions such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1614.203(a)(3). A "qualified handicapped person" is one who "with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others ..." 29 C.F.R. § 1614.203(a)(6).

■ Plaintiff alleges that he suffers from a mental condition, schizophrenia. However, the proper inquiry under the Rehabilitation Act is whether he was substantially limited in one or more of his major life activities at the time of the alleged incidents of discrimination. Plaintiff's physician-imposed restrictions that prevented plaintiff from working Saturdays, working alone, and working the window, raise a reasonable inference that plaintiff suffered from a mental impairment which substantially limited him in the performance of any major life activity. The conflicting evidence also creates a genuine issue of material fact whether plaintiff was a handicapped person within the meaning of the act. Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994).

■ However, even assuming *arguendo* that plaintiff meets the first two requirements, plaintiff must show that he was discharged "solely by reason of his handicap."

*Taub v. Frank*, 957 F.2d at 11. Plaintiff fails to provide compelling evidence on this last issue, and thus his claim must fail.

### Postal Service's Duty to Provide Plaintiff with Reasonable Accommodations

The case law is clear that a defendant's duty to provide reasonable accommodation to a plaintiff under the Rehabilitation Act once plaintiff establishes a prima facie case that he is a qualified individual. *Jasany v. United States Postal Service*, 755 F.2d 1244, 1250 (6th Cir.1985).

■ The regulations prescribed by the EEOC require an agency to make reasonable accommodation to the known mental limitations of an employee who is a qualified individual with handicaps "unless the agency can demonstrate that the accommodation would impose an undue hardship on the operations of its program." 29 C.F.R. § 1614.203(c). Courts have ruled consistently that "[a]ccommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee ... requires a fundamental alteration in the nature of [the] program." *School Board of Nassau County v. Arline*, 480 U.S. 273, 288, n. 17, 107 S.Ct. 1123, 1131, n. 17, 94 L.Ed.2d 307 (1987). Moreover, reasonable accommodation does not mean that the Postal Service has to eliminate any of the essential functions of the plaintiff's job. *Jasany*, 755 F.2d at 1250.

■ The Postal Service may also rely on the collective bargaining agreement as a legitimate business reason for not making the requested accommodation. *Daubert v. United States Postal Service*, 733 F.2d 1367 (10th Cir.1984); *see also Shea v. Tisch*, 870 F.2d 786, 789–90 (1st Cir.1989) (agency is not under an obligation to accommodate an employee by assigning him to permanent light duty where to do so would violate the Collective Bargaining Agreement).

■ Plaintiff was a Distribution and Window Clerk at the Victoria Station of the Aguadilla Post Office. The Distribution and Window Clerk position comprises various functions at the public window of the Post

Office, such as selling stamps and accepting and distributing parcels. In addition, clerks are required to distribute incoming mail for dispatch based upon knowledge of a distribution scheme. Baerga Dec., ¶ 7, Attachment 2.

The Aguadilla Post Office encompasses the Main Post Office and the Victoria and Ramey Stations. Victoria Station is a small office, comprised of three clerks and one supervisor. All three clerks were Distribution and Window Clerks, and were expected to perform both distribution and window duties. Baerga Dec., ¶ 6. Plaintiff had voluntarily bid on and been awarded that position. His bid assignment specified that his off-duty days were Thursday and Sunday. The other two clerks had bid assignments with Saturday as their non-scheduled day. Id., ¶ 6.

The Ramey Station had only two clerks, both of whom were required to cover the window. Id. ¶ 19. Mr. Bernabe Baerga supervised the Aguadilla Main Post Office, as well as the two stations. Id. at ¶ 3.

Plaintiff presented the Postal Service with a list of restrictions that prevented him from working Saturdays, working alone, working the window, working under stress, and even working under Mr. Baerga, who had responsibility for all stations in the Aguadilla Post Office. Id., ¶¶ 5, 8, 11, 13, 18, 20, 22, 28, Attachments 5, 14. Furthermore, plaintiff Fuentes restricted his search for light duty assignment to the Victoria Station. ¶ 18, Attachment 12.

Defendant argues that there were no permanent light duty assignments available within the Aguadilla Post Office. Moreover, defendant adds that even if light duty had been available, plaintiff had been working for the Postal Service for less than five years, which is the minimum number of years required under the collective bargaining agreement for a permanent light duty assignment. Accordingly, argues defendant for the Postal Service to have placed him in such a position would have violated the collective bargaining agreement. Alberts Dec., ¶ 14.

Defendant's most compelling argument to justify its conduct is that the Postal Service would have had to eliminate one of the essential functions of plaintiff's position, in order to accommodate his request that he not be assigned window duties. When plaintiff limited his light duty request to Victoria Station, plaintiff narrowed the Postal Service's options. At the Main Post Office, which was less than three miles from Victoria Station, there was more work available for clerks which did not require service at the public window. Baerga Dec. ¶ 19.

On the other hand, since Victoria Station had only three clerks and a supervisor, elimination of plaintiff's window duties there would have left him with distribution and mark-up duties consisting of barely four hours of work per day. Baerga Dec., ¶ 10. Such accommodation would also have imposed a hardship upon two of the three clerks that were routinely assigned to the window at a time, without a third clerk to cover for the others during their lunches and breaks. Id. Without plaintiff's assistance at the window during breaks, service to the public would have suffered. Id. Viewed in this context, the Court concludes that it was unreasonable for plaintiff to require accommodation at Victoria Station only.

Regarding the plaintiff's request that she should not work under Mr. Bernabe Baerga, the Postal Service could not accommodate that request without plaintiff's obtaining a transfer to another facility, since Mr. Baerga was superintendent of Postal Operations for the Aguadilla Post Office, including the Victoria and Ramey Stations. Baerga Dec., ¶ 3. By stating that he could not work under Mr. Baerga's supervision, plaintiff removed himself from all positions in the Aguadilla facility.

Additionally, since plaintiff would not submit to the requested fitness-for-duty examinations, the Postal Service was unable to evaluate plaintiff's ability to work with or without these, or other accommodations. (Arbitrator's Decision, Attachment 9, p. 11) In view of the above discussion, we find that defendant's decision to remove plaintiff from his position was not motivated "by reason of his handicap." *Taub v. Frank*, 957 F.2d at 11. Accordingly, since plaintiff has failed to meet the essential elements of the Rehabilitation Act, defendant's motion for summary

judgment is hereby **GRANTED.** (Docket # 35) Judgment shall follow accordingly.

**SO ORDERED.**