Diana M. MAULDING, Plaintiff–
Appellant,

v.

Louis W. SULLIVAN, Secretary,
Defendant–Appellee.

No. 91–2747.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 10, 1992.

Decided April 7, 1992.

Rehearing Denied May 5, 1992.

Diana M. Maulding, pro se.

Mary Mitchell Armstrong, Washington, D.C., argued (Charles A. Banks and Lesa Bridges Jackson, Little Rock, Ark., on brief), for defendant-appellee.

Before ARNOLD, Chief Judge, McMILLIAN, Circuit Judge, and WELLFORD,* Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

Plaintiff, Diana Maulding, filed a complaint with the Merit Systems Protection Board (MSPB) alleging that she was constructively discharged from her agency job at the National Center for Toxicological Research (NCTR), Food and Drug Administration (FDA), United States Public Health Service, based on adverse agency actions as well as charging sex and handicap discrimination.[1] The administrative law judge (ALJ) found in her favor on the handicap discrimination claim, but found for the defendant on all other claims. The agency appealed the ALJ's decision to the MSPB which reversed the rulings on handicap discrimination that were favorable to the plaintiff. 42 M.S.P.R. 605 The district court, on appeal, affirmed and dismissed all of plaintiff's claims for relief. We AFFIRM.

The plaintiff began her employment with the Public Health Service, a division of the Department of Health and Human Services, in 1976. From 1976 to late 1980, she worked as a chemist in a laboratory, first in the Teratology Division and then in the Chemistry Division. She made no complaints to her superiors about breathing or pulmonary problems during the time. In December, 1980, the plaintiff was reassigned to a position as a pharmacologist in the Office of Scientific Intelligence, which later became part of the Division of Comparative Toxology, working in an office rather than in the laboratory.

When Dr. Lionell Poirier became Director of the Division of Comparative Toxology in early 1987, he began undergoing a long planned reorientation from "paper" research to bench or laboratory research in the area of nutritional toxology, the area in which plaintiff worked. Dr. Poirier spoke with each member of his staff regarding the proposed transition to laboratory research. At that time, Maulding informed him that she would not work in the laboratory due to a claimed allergy to certain chemicals which would be utilized in the laboratory.

In early 1988, persisting in her claims that she could not safely work in the laboratory, Maulding requested part-time work at NCTR so that she could obtain an outside position as a part-time law clerk to support herself. She reiterated her claim that health considerations precluded her from participating in lab work. In February of 1988, Dr. Poirier denied her request for part-time work. Insisting that the Division would be doing primarily lab work, Dr. Poirier asked the plaintiff to produce specific and current information about her alleged allergies or sensitivities to various substances to support her request to be excused from lab work. Dr. Poirier informed the plaintiff that her request would be submitted and reviewed by Dr. George Smith, the agency's medical advisor, pursuant to OPM regulations.

In response to Dr. Poirier's request, the plaintiff submitted a letter from Dr. Alvin Strauss, dated April 18, 1985, recommend-

---

* The Honorable Harry W. Wellford, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. Maulding is now a lawyer and is proceeding *pro se.*

ing that she not be assigned to the lab.[2] Dr. Strauss' letter indicated that the plaintiff's "further exposure to noxious fumes" is detrimental to her health based on adverse asthmatic reactions from Maulding's claimed exposure to phosgene some ten years earlier. Along with Dr. Strauss' letter, the plaintiff submitted a copy of Dr. Poirier's request for medical documentation and a memorandum dated March 11, 1988, prepared by Dr. Poirier and addressed to Dr. Smith, which listed the chemical compounds that might be present in the lab. A proposed position description was also presented which indicated that the plaintiff would be conducting *in vitro* cell culture experiments in the lab.

Dr. Smith reviewed the documents submitted by the plaintiff to ensure that (a) the diagnosis or clinical impression was justified in accordance with established diagnostic criteria; and (b) the conclusion and recommendation were not inconsistent with generally accepted medical principles and practices according to 5 CFR § 339.-102, the applicable regulation. On March 25, 1988, Dr. Smith wrote a memorandum to Mary Long, an employee relations specialist, FDA, stating that "without clinical records to document the existence of a medical condition that warrants restriction from specific chemical exposure, and documentation that such exposures are likely to occur ...," and "because no information exists that the plaintiff would be exposed to allergens in the laboratory to which she would not be exposed elsewhere, there is no medical basis upon which to recommend approval of her request."

On April 8, 1988, Dr. Poirier assigned the plaintiff to work in the laboratory. Because she did not come to work as ordered, Dr. Poirier next directed the plaintiff to report to the assigned laboratory job on April 13. On that day, she reported to

NCTR for about two hours, without going to the laboratory. Dr. Poirier then charged the plaintiff with absence without leave for two days because she did not report to the laboratory without any approved excuse for her absence.[3]

Upon request, the plaintiff was granted more time to supply Dr. Smith with additional medical documentation supporting her health claims. Maulding then submitted the following additional documents: (1) copies of office records from March and April of 1988 from an Arkansas family clinic; (2) a letter, dated April 13, 1988, from Dr. Forrest B. Miller recommending that plaintiff refrain from lab work; (3) a copy of a medical record from Dr. Strauss' clinic; (4) a note to Dr. Smith from plaintiff dated April 22, 1988; (5) a copy of a page from the Dictionary of Chemical Producers showing that plaintiff's former employer (prior to 1976) utilized phosgene; and (6) a memorandum from St. Vincent's Infirmary dated April 15, 1988. After reviewing this additional information, Dr. Smith determined that the records did not sufficiently indicate that the plaintiff had a disease of the lungs or respiratory system except for allergies that the plaintiff has had all her life. In summary, Dr. Smith concluded that Maulding failed to carry her burden of persuasion in this regard.

Dr. Poirier accordingly directed the plaintiff to report to the laboratory on May 11, 1988, and the plaintiff again refused to report for this work. Beginning May 16, 1988, the plaintiff neither reported for duty nor requested leave. On June 21, 1988, Dr. Poirier wrote to Maulding directing her to notify him by June 28, 1988, of her intentions with respect to her assigned job. On July 15, 1988, in the absence of any response, Dr. Poirier notified the plaintiff that he proposed to remove her from feder-

---

**2.** Dr. Strauss was deceased at the time Dr. Poirier requested medical documentation. The three-year-old letter from Dr. Strauss was not accompanied by any documentary explanation for his recommendation.

**3.** On April 11, 1988, the plaintiff telephoned Dr. Smith and asked him to "rescind" his memorandum rejecting her requests until she could

present more medical documentation. Dr. Smith informed the plaintiff that he could not rescind his memorandum and suggested to her that she request relief from her supervisor. The plaintiff wrote to Dr. Poirier on April 13, 1988, requesting time to submit additional medical documentation to Dr. Smith. This request was granted.

al service as a pharmacologist. Defendant asserts that Maulding was notified of her right to respond, but failed to do so. We are furnished no contrary information in this respect.

The deputy director of NCTR notified the plaintiff of her removal, effective August 27, 1988, for failure to follow a written direction and because of her absence without leave. There was no response.

On September 20, 1988, however, Maulding appealed her removal to the MSPB, alleging that the agency constructively and impermissibly discharged her. First, she alleged that she was fired in reprisal for her "whistleblowing" activities in contesting NCTR's peer review system.[4] She also alleged that she was terminated as a result of sex discrimination and handicap discrimination. After a hearing, the ALJ reversed the agency's decision to discharge the plaintiff, determining that the agency's insistence on clinical medical evidence to support her request to be relieved of lab work was unjustified and that plaintiff's reasonable fear for her health justified her absence from work. The ALJ also determined that the plaintiff was physically handicapped under the handicap laws and that she had articulated a reasonable method of accommodating her handicap through reassignment. The ALJ rejected Maulding's allegation of reprisal because of her opposition to the peer review system, and because she did not show that retaliation was the motivating factor for her reassignment to lab work. The ALJ also rejected the appellant's claim of sex discrimination as unsupported.

On the Agency's appeal to the MSPB, the Board reversed the ALJ finding for the Agency, and against Maulding, in all respects.[5] It determined that the plaintiff's absence from duty was not justified and that the plaintiff had not met her burden under 5 CFR § 339.101 to provide adequate medical documentation that would excuse her from her assigned lab duties. The Board further found that the appellant was not a handicapped individual under The Rehabilitation Act, 29 U.S.C. § 701 *et seq.* The plaintiff appealed the Board's decision to the district court. After a two-day trial, the district court affirmed the Board's decision. This appeal ensued.

■ The Board's decision on the discrimination claims before it was subject to *de novo* review by the district judge. The district court's findings as to claims of employment discrimination, however, are reviewed under a clearly erroneous standard. *See Pullman–Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Marafino v. St. Louis County Circuit Court,* 707 F.2d 1005, 1006 (8th Cir.1983); *see also Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ Plaintiff supplied insufficient evidence of sex discrimination under Title VII, and we find no clear error in the district court's conclusion in this regard.[6] To support her claim, the plaintiff alleged that other males in her division were liberally allowed relief from lab duties and that she was held to a more stringent standard. To support this allegation, the plaintiff showed that Greenman, a male employee, requested relief from lab work and that such relief was granted. Defendant's proof indicated, however, that Greenman based his request on a lack of ability to handle the job, not on

---

4. In May, 1987, the NCTR issued a guide or peer evaluation plan called "The Evaluation Plan for Support/Service Scientists Positions at NCTR." The guide provided for panels to review information regarding qualifications and classifications of nonresearch scientists. The plaintiff stated her opposition to the guide at an NCTR meeting in May, 1987. On July 10, 1987, the plaintiff wrote to the deputy regional director for the Office of Personnel Management (OPM) objecting to the guide as being illegal. On July 29, 1987, the OPM responded that the guide was consistent with the Classification Act and that the OPM would not intervene in the review of support scientist positions at NCTR.

5. Maulding filed no cross appeal or protective appeal to MSPB from denial of her retaliation and sex discrimination claims.

6. We note also that plaintiff did not effect a timely appeal from the adverse determination by the ALJ of her sex discrimination claim. The same procedural deficiency applies to her "whistleblowing" or retaliation claim which the ALJ found to be unsubstantiated.

a medical condition, and the two employees were, therefore, not similarly situated. Maulding also attempted to show that another male employee was absent without excuse and that he was not charged with AWOL as was she. That employee, however, was shown to have taken a normally scheduled day of credit leave and his absence was approved.

■ Maulding also fails in her claim of handicap discrimination. In order to state a prima facie case of handicap discrimination under the Act, the plaintiff must show that she:

(i) has a physical or mental impairment which *substantially* limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(8)(B)(i) to (iii) (1988) (emphasis added). *See Jasany v. United States Postal Service,* 755 F.2d 1244, 1248 (6th Cir.1985). "Major life activities" includes "breathing," and "has a record of such impairment" means that one has a history of or has been classified as having a physical impairment that *substantially* limits a major life activity. § 1619.701(c), (d).

The district court found on the record that the plaintiff had "failed to establish a sensitivity to chemicals and a history of a substantial limitation upon employability as defined in [the regulations and cases]," accepting the testimony and opinion of Dr. Smith. Dr. Smith had concluded that plaintiff had produced inadequate, recent medical history concerning her alleged condition; that her doctors' medical opinions lacked supportive, clinical findings; and that there was insufficient indication of a severe respiratory problem that would be aggravated by the assigned lab work. The district court based its conclusion primarily on the premise that the plaintiff has the burden to show she is a handicapped person under the Rehabilitation Act, and that because of her lack of evidence, she has failed in that burden. *See Jasany,* 755 F.2d at 1248 (plaintiff's burden to show handicap). The court further pointed out

that cases in which handicaps were established, the plaintiffs all supported their allegations with adequate medical documentation. *See Norcross v. Snead,* 755 F.2d 113 (8th Cir.1985) (evidence shown to establish blindness); *Harrison v. Marsh,* 691 F.Supp. 1223 (W.D.Mo.1988) (evidence produced to demonstrate muscle damage); *Rhone v. Dept of the Army,* 665 F.Supp. 734 (E.D.Mo.1987) (evidence produced to show history of sarcoidosis (pulmonary disease)).

The district court held that even if the plaintiff were a handicapped person under the statute, she could not show that her sensitivity to chemicals substantially limits her major life activities. We find no error in its conclusion that her ailment would prevent her only from lab work, and that such a limitation does not substantially limit her employment as a whole. *See Forrisi v. Bowen,* 794 F.2d 931, 934 (4th Cir.1986) ("an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job."); *Jasany,* 755 F.2d at 1248–1249 (major life activity not substantially limited when impairment interferes with performance of one particular job). We agree with the reasoning of the district court and find that it was not error to reject the plaintiff's claim of handicap discrimination on the basis of failure to carry the burden of proof in this regard.

■ In regard to the standard of review for the nondiscriminatory adverse agency actions, the same standard is employed at both the trial and the appellate levels. We accord the district court's decision "no particular deference." *First National Bank of Fayetteville v. Smith,* 508 F.2d 1371, 1374 (8th Cir.1974), *cert. den.,* 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975); *see also Lockhart v. Kenops,* 927 F.2d 1028, 1032 (8th Cir.), *cert. den.,* — U.S. —, 112 S.Ct. 186, 116 L.Ed.2d 148 (1991); *Brown v. United States Dept. of Interior,* 679 F.2d 747, 749 (8th Cir.1982). "The scope of judicial review of decisions by the [MSPB] is limited to ensuring that required procedures have been followed and that the

action taken was not arbitrary or capricious." *Grasso v. IRS*, 657 F.2d 224, 225 (8th Cir.1981). To be sustained, the agency decision need only have had a rational basis in law. *Id.; see also Hurley v. United States*, 575 F.2d 792, 793 (10th Cir.1978); 5 U.S.C. § 7703(c) (1988).[7]

■ With respect to Maulding's nondiscrimination claims (whistleblowing, harassment and procedural deficiencies), we find that the Board's decision was not arbitrary nor capricious. We agree with the district court that "the decision of the Board was supported by substantial evidence. It is clear that the Board's decision was neither arbitrary nor capricious nor an abuse of discretion."[8]

Although given sufficient opportunity, Maulding provided inadequate medical evidence to justify being excused from lab duty. Dr. Smith reviewed the medical documentation according to 5 C.F.R. § 339.101 which requires that "the diagnosis or clinical impression is justified in accordance with established diagnostic criteria." Maulding failed to demonstrate that his conclusions and recommendations were "inconsistent with generally accepted medical principles and practice." After concluding that her initial submission of medical information was inadequate, Dr. Smith gave the plaintiff extra time to supplement her documentation.

The record and briefs show and the district court found that, in total, the plaintiff submitted statements of two doctors that she refrain from lab work, based on some work documentation, some clinical evidence, and a memorandum of her reported history of chemical exposure. Her clinical work showed that her X-rays were normal, and her pulmonary function studies did not require restrictions to her chemical exposure.[9] Her doctors' letters contained statements that the plaintiff should refrain from working in the lab, based primarily on her own information, fears, and subjective concerns. Neither was supported by sufficient records, treatment plans, or other corroborating evidence.

Dr. Smith concluded that the letters and other documentation were inadequate as a medical basis upon which he could conclude that there was a serious health risk involved in the assigned lab work. He had given the plaintiff a list of chemicals to which she would be exposed in the lab, and no doctor made specific findings that those certain chemicals would harm the plaintiff.

We find no error in the Board's conclusion, and the district court's conclusion, that plaintiff showed no serious risk of harm that would result from exposure to the chemical agents utilized in the laboratory. We note that at a time closer to her alleged exposure to phosgene over a period of years through 1980, plaintiff had worked in the chemistry division laboratory without complaint. Maulding now harbors genuine fears and concerns about respiratory problems, and that she was presented with some difficulties by reason of passage of time in obtaining medical proof. It is regrettable that the agency, for whatever reasons, could find no basis to accommodate the wishes and concerns of this experienced employee. She has demonstrated energy, intelligence, and persistence in pursuing her claims before the administrative agencies and the court, unfortunately to no avail. We are sympathetic to her contention that her doctors did not know how to test her chemical aversions and that defendant was obdurate in insisting upon data

---

**7.** 5 U.S.C. § 7703(c) (1988) provides:

[T]he court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—
(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;
(2) obtained without procedures required by law, rule, or regulation having been followed; or
(3) unsupported by substantial evidence.

**8.** The plaintiff did not petition for review of the ALJ's findings with respect to her claim of reprisal with the MSPB. *See* MSPB Order at p. 696 n. 2. The plaintiff, furthermore, submitted no tenable evidence to support this allegation.

**9.** The plaintiff claims that Phosgene, a chemical to which she was exposed in the early 1970's, does not show up on a pulmonary examination. There is no evidence, however, that Phosgene is one of the chemicals to be used in the lab.

available only from limited sources. These acknowledged concerns on our part do not overcome plaintiff's failure on this record to carry her burden of demonstrating handicap, disability, or *justified* health concerns that would preclude at least an effort to report for, and to attempt to perform, her assigned work.

Although the issues were close, for the reasons indicated, we AFFIRM the decision of the district court.