Carol COFFEY, Plaintiff,

v.

The COUNTY OF HENNEPIN; Rafael Viscasillas, Individually and in his Official Capacity as Director of the Hennepin County Personnel Department; Margit Hallberg, Individually and in her Official Capacity as Senior Human Resources Representative for Hennepin County; Barbara J. Fici, Individually and in her Official Capacity as Human Resources Benefits Administrator for Hennepin County; Thomas G. Lavelle, Individually and in his Official Capacity as Director of the Juvenile Corrections Program at Hennepin County; Kathryn A. Van de Steeg, Individually and in her Official Capacity as Division Manager of Family Court Services at Hennepin County; and John Does 1–30, Individually and in Their Official Capacities as Employees of Hennepin County, Defendants.

Civil No. 3–96–1191(PAM/JGL).

United States District Court,
D. Minnesota,
Third Division.

Sept. 10, 1998.

Heidi A. Schneider, Gartner & Schupp, Minneapolis, MN, for Carol Coffey.

Beverly Jean Wolfe, Martin Daniel Munic, Cheri Sudit, Hennepin County Attorneys Office, Minneapolis, MN, for County of Hennepin, Rafael Viscasillas, Margit Hallberg, Barbara J. Fici, Thomas G. Lavelle, Kathryn A. Van de Steeg and John Does, 1-30.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

This matter is before the Court upon Defendants' Motion for Summary Judgment. For the following reasons, the Court grants Defendants' motion.

## PROCEDURAL BACKGROUND

Plaintiff Coffey filed the present lawsuit against Defendants after the EEOC dismissed two of Plaintiff's charges in which she alleged discrimination by Hennepin County. Defendants then filed their first .motion for summary judgment. This Court granted the

motion in part and denied it in part. (*See Coffey v. County of Hennepin*, No. 3–96–1191 (D.Minn. Apr.30, 1998)) (order granting summary judgment as to Plaintiff's violation of due process claims, respondeat superior claim under § 1983, and dismissing individual defendants from Plaintiffs ADA, MHRA, and FRA claims.) After further discovery, Defendants have now filed a second summary judgment motion renewing its motion on the surviving counts.

## FACTUAL BACKGROUND

Plaintiff Carol Coffey was employed as a social worker in family services for Hennepin County from 1969 to 1979. In 1979, she became a probation officer and continued in that capacity until 1991, at which time she became disabled. Diagnosed with chronic fatigue syndrome and multiple chemical sensitivity syndrome, Coffey depleted her sick leave and her 160 hours of special leave without pay. Therefore, on May 11, 1991, she requested and was granted six months medical leave. On November 11, 1991, Hennepin County also granted her request for medical layoff. This layoff, though limited to a maximum of three years, allowed Plaintiff to retain her eligibility for recall until November 11, 1994. Eligibility for recall allowed reinstatement with seniority and salary if she worked again within a three year time span. However, if the three year recall eligibility period expired before Plaintiff was placed in a recall position, Plaintiff would become ineligible for recall and her employment would be terminated. (Defs.' Exs. 2B §§ 7.5c, 12.12a; 5 at 2.) Further, the recall was not guaranteed, but was dependent upon whether available vacancies existed in Plaintiff's job class. (Defs.' Exs. 2B §§ 10.11, I 1.1; 3B at 3.) During her medical leave, Coffey sought treatment for her illness while she obtained disability pay from the Social Security Administration ("SSA"), Public Employees Retirement Association ("PERA"), UNUM Life Insurance Company ("UNUM"), and Defendant Hennepin County ("the County").

In the fall of 1994, Plaintiff notified Defendant Hennepin County by letter that she could return to work by October 17, 1994. (*See* Defs.' Exs. 42A; 43B.) Attached to this letter she included a physician's letter delineating the accommodations Plaintiff needed.

(*See* Defs.' Ex. 42B.) The doctor's recommendations included that Plaintiff's office should be in a building with windows that manually open and that the environment be free of cigarette smoke, building materials, adhesives, glues, epoxies, paints, varnishes, car exhaust fumes, room deodorizers, perfumes, hair sprays, cleaning products, copy machines and computers. In addition, the doctor recommended that Plaintiff should not work in the Government Center and the Health Sciences Building, the two main buildings used by Hennepin County. Further, Plaintiff's use of phone, computer, and photocopier were to be minimized. Plaintiff offered to bring her own air filter and agreed to supply her own speaker phone and lighting. However, she provided Defendant Hennepin County no suggestions as to how the County could satisfy the other needed accommodations. Moreover, because of her illness the doctor stated that even if these accommodations were provided, Plaintiff would experience "mental slowdown"; therefore, her workstressors would have to be reduced to a minimum, and her tasks limited to three or four. (*See id.*)

Hennepin County operates a Work Return Assistance Program ("WRAP") to assist those employees who return from disability leave. (*See* Pl.'s Ex. E.) The policy requires that the WRAP administrator place a returning disabled employee "in an alternative position within the County or with another employer" if the employee's original department finds the employee's return to be "an undue hardship" or the return requires "unreasonable accommodation." (*Id.* at 3.) Defendants assert that Plaintiff did not request a WRAP placement until her eligibility period had expired with the County. In contrast, Plaintiff argues that she did indeed contact Barbara Fici, Hennepin County WRAP administrator, asking about the program well before the expiration period. (*See* Coffey Aff. ¶ 16.) Despite her requests, Plaintiff contends that she was "repeatedly denied" WRAP placement. (*See id.* ¶¶ 19–20.)

In January 1995, the County offered Plaintiff a position as a juvenile corrections director. Though this position met Dr. Eck-

erly's recommendation that Plaintiff not be officed in the Government Center or the Health Services Building, it did not come close to providing the other requested accommodations. (*See* Defs.' Ex. 4A; Pl.'s Ex. F.) However, the County advised Plaintiff that it would "endeavor to make whatever reasonable accommodations are necessary in view [her] medical issues." (Defs.' Ex. 5.) Because the offered position was a relatively new position, Plaintiff requested additional time, beyond the expiration of her recall eligibility, to review the demands of the position in light of her disability. The County granted her request, but informed her that the extension was only for that one position; thus, if she declined the position, her layoff eligibility would expire. She would, however, continue to be eligible as a reinstatement candidate. (*See* Defs.' Ex. 4A at 1–2.)

On January 19, 1995, the County received a letter stating that Plaintiff was declining the offered position "because *she determined* that the position could not satisfy her requested accommodations." (Defs.' Mem.at 5 (emphasis in original); Defs.' Exs. 4B at 9; 5 at 2.) She further requested placement in a probation officer vacancy, and only if these positions were not suitable did she request referral to the WRAP program. (*See* Defs.' Ex. 4B at 9–10.) Therefore, Plaintiff was terminated on February 10, 1995, and. became a reinstatement candidate for the next five years. In a reinstatement position, Plaintiff lost any preference, seniority, or specific salary she had maintained while an eligible employee.

Rafael Viscasillas, Director of Hennepin County Human Resources Department, contacted Plaintiff for three positions in the Community Corrections Department when Plaintiff was a reinstatement candidate, but she failed to interview for any of the positions. (*See* Defs.' Ex. 5 at 1–2.) Also in July 1997, the County sent Plaintiff a written offer for a probation officer vacancy. The County offered to restore her previous seniority level, rehire her at the highest step of the salary scale, and fully reinstate her vacation and sick leave. (*See* Defs.' Ex. 8.) However, Plaintiff declined the position and maintains that the County only offered the position as an attempt to settle the present lawsuit.

In summary, Plaintiff contends that the County refused to offer her available positions before her termination and that the County refused to rehire her for reinstatement, despite the fact that she had demonstrated her ability to work. Defendants now move for summary judgment on Plaintiff's remaining claims: the Americans With Disabilities Act, Rehabilitation Act, Minnesota Human Rights Act, violations of equal protection, reprisal and retaliation violations, negligent supervision, training, retention and hiring practices, aiding and abetting, respondeat superior, and breach of contract. The Court maintains jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1219–20 (8th Cir.1992). The court determines materiality from the substantive law governing the claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material. *See id.* A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. *See id.* at 248–49, 106 S.Ct. 2505.

## DISCUSSION

### A. Defendants' Motion in Limine

Defendants have filed a motion in limine to exclude "any expert testimony, by both medical and lay witnesses" regarding Multiple Chemical Sensitivities ("MCS")[1] or environmental illness. (Defs.' Mem. at 1.)

---

1. Defendants acknowledge that Plaintiff's expert, Dr. Jean Eckerly, refers to Plaintiff's illness as "chronic fatigue syndrome" and Dr. William Rea describes the illness as "chemical sensitivity," not MCS. However, it is clear, based on each doctor's prior reports which labeled Plaintiff's symptoms as MCS, that the syndrome actually being discussed is MCS. (*See* Defs.' Exs. 8, 10, 19A–19D.); *see also Summers v. Missouri Pac. R.R. System*, 533, 539–40 (E.D.Okla.1995).

The theory behind MCS is that "various kinds of environmental insults may depress a person's immune system so that the exposed person ... becomes hypersensitive to other chemicals and naturally occurring substances." Federal *Judicial Center, Reference Manual on Scientific Evidence* 73(1994). Defendants argue that these medical theories are "untested, speculative and far from general acceptance in the medical or toxicological community." (Defs.' Mem. at 2.) Accordingly, Defendants assert that this testimony will be inadmissible under Federal Rule of Civil Procedure 702. Plaintiff counters Defendants' allegations by claiming that the expert opinions of Plaintiff's two medical doctors satisfy *Daubert* criteria. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Rule 702, which governs the admissibility of expert testimony, provides that expert testimony is admissible only when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed R. Evid.R. 702. *Daubert* further delineates that for the expert testimony to be admissible, the expert witness's testimony regarding the scientific knowledge must meet the following criteria: (1) the knowledge can be and has been tested, (2) it has been subjected to peer review, (3) it has a known or potential rate of error, and (4) it has been generally accepted by the scientific community. *See Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786. Simply, the plaintiff must show that the scientific knowledge is reliable and relevant.

In this case Plaintiff cannot meet these criteria. First, "[c]linical ecologists have not been recognized by traditional professional organizations within the medical community." Federal Judicial Center, *Reference Manual on Scientific Evidence* 73 (1994); *see also* Stephen Barrett, *Chemical Sensitivity: The Truth About Environmental Illness* 22–27,31–42 (1998) (Defs.' Ex. 5.); Defs.' Exs. 3A, 7. Second, federal courts do not consider environmental illness or MCS a scientifically valid diagnosis. See Defs.' Ex. 7 at 490; *Brown v. Shalala,* 15 F.3d 97, 100 (8th Cir.1994); *Summers v. Missouri Pac. R.R. System,* 132 F.3d 599, 603 (10th Cir.

1997) (holding that "MCS is a controversial diagnosis that has been excluded under *Daubert* as unsupported by sound scientific reasoning or methodology"); *Bradley v. Brown,* 42 F.3d 434 (7th Cir.1994); *Coffin v. Orkin Exterminating Co.,* 20 F.Supp.2d 107, No. 97–258–B (D.Me. July 21, 1998); *Frank v. New York,* 972 F.Supp. 130, 136–37 (D.N.Y. 1997) (finding that the "theory underlying MCS is untested, speculative, and far from general acceptance in the medical or toxicological community" and "fails to meet ... *Daubert*."); *Summers,* 897 F.Supp. at 542; *Sanderson v. International Flavors & Fragrances, Inc.,* 950 F.Supp. 981, 1002 (C.D.Cal.1996).

The Court has carefully examined the articles cited by Plaintiff, yet has failed to find an article or a medical association which opines that the methodology of diagnosing MCS has progressed to a point that it is scientific knowledge capable of assisting a fact-finder. Accordingly, the Court grants Defendants' motion in limine in part, excluding any expert medical testimony regarding MCS or a related environmental illness.

### B. Statute of Limitations

Defendants assert that Plaintiff's ADA, FRA, and MHRA claims should be dismissed because they are barred by the statute of limitations. The Eighth Circuit has held that with respect to disability discrimination claims, "[t]he statute of limitations begins to run at the time of the discriminatory act, and not when the consequences of the act become most painful." *Conner v. Reckitt & Colman, Inc.,* 84 F.3d 1100, 1102 (8th Cir.1996). In reliance on this statement, Defendants assert that the time of the discriminatory act occurred when Plaintiff was placed on medical layoff on November 11, 1991. The Court disagrees with this assertion.

Plaintiff requested the medical layoff. Therefore, at that juncture, the employer was simply doing what Plaintiff requested. Obliging a request for layoff does not amount to discrimination. To hold otherwise would be fatuous. In 1991, the parties agreed that after Plaintiff's disability leave expired, she would have an opportunity to return to work.

When an employer takes affirmative steps to return a disabled employee to work, the disabled employee's cause of action accrues when the employer terminates the employee. *See Winfrey v. Chicago*, 957 F.Supp. 1014, 1020–21 (N.D.Ill.1997). In this case, the employer had implemented and was following the County's plan for disability. Only when Defendants refused to allow Plaintiff to return to work, in October 1994, could any alleged discrimination potentially have taken place. However, because Defendants did offer Plaintiff a position, her cause of action accrued in February 1995, upon her termination. Therefore, the claims are not barred by the statute of limitations.

Defendants further assert that Plaintiff's ADA claims are barred because the ADA is not retroactive. Of course, Defendants are basing this argument on the assumption that the discriminatory acts occurred before July 1992, the effective date of the ADA. In essence, Defendants argue that the layoff status was a type of pre-termination—in lieu of formal termination—and thus rendered the ADA ineffective against the County. Because the Court has determined that the discriminatory acts occurred no earlier than 1994, Defendants' argument fails.

## C. Americans With Disabilities Act

A plaintiff must satisfy the following elements to establish a prima facie case under the Americans With Disabilities Act ("ADA"): (1) the plaintiff is a "disabled person" within the meaning of the ADA as defined in 42 U.S.C. § 12102(2); (2) the plaintiff is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) the plaintiff has suffered an adverse employment action because of her disability. *See Aucutt v. Six Flags Over Mid–America Inc.*, 85 F.3d 1311, 1318 (8th Cir.1996); *Benson v. Northwest Airlines Inc.* 62 F.3d 1108, 1112 (8th Cir.1995). In this case, Defendants assert that Plaintiff is not disabled within the meaning of the ADA. Further, Defendants contest that if plaintiff is disabled, she is not a "qualified disabled person" within the meaning of the ADA.

Plaintiff proffers two arguments to support her contention that she meets the threshold requirement of "disabled" under the ADA.

First, she argues that she fits within the definition of disabled under 42 U.S.C. § 12102(2)(A). Second, she argues that Defendants regarded her as disabled and, thus, she is protected under the ADA pursuant to 42 U.S.C. § 12102(2)(C).

### 1.42 U.S.C. § 12102(2)(A)

Section 12102(2)(A) defines "disability," as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Under the ADA regulations, "major life activities" are "functions such as caring for oneself, performing manual tasks, breathing, ... and working." 29 C.F.R. § 1630.2(i). "Substantially limits" with respect to the major life activity of working means that an individual is

significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.20(3)(i). Importantly, "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir.1995) (quoting *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994)).

Plaintiff asserts that she is substantially limited in the major life activity of working. First, Defendants argue that because the Court has granted their motion in limine, and excluded any expert testimony regarding environmental illness, Plaintiff cannot establish that she has an impairment because the evidence will show that she is physically healthy. The Court rejects this argument. Plaintiff herself can testify to how she feels. In addition, her medical experts will opine that Plaintiff is impaired by diseases other than MCS. Defendants do not challenge that the other ailments of Plaintiff fail to fall within the definition of "disabled" under the ADA.

Second, Defendants argue that any physical impairment that Plaintiff might have

does not substantially or materially limit her major life activities. Plaintiff maintains that her major life activity of "working," as defined in the ADA, is substantially limited because she is disqualified from a broad range of jobs. Plaintiff bases this argument on her inability to do computer work because of MCS.

■■■ In determining whether an impairment is 'substantially' limiting, the court 'should' consider "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment" 29 C.F.R. § 1630.20(2).[2] Importantly, "working" does not mean working at a particular job of the plaintiff's choice. *see Maulding v. Sullivan,* 961 F.2d 694, 698 (8th Cir.1992). The plaintiff maintains the burden to show her disability. *See id.* That burden may be met, according to the Eighth Circuit, when the plaintiff proffers evidence, in addition to her own conclusory testimony, that a major life activity is substantially or materially limited. *Snow v. Ridgeview Med. Ctr.,* 128 F.3d 1201, 1207 (8th Cir.1997).

In the present case, Plaintiff has offered no substantial evidence beyond her own statements that she cannot perform a class of jobs or a broad range of jobs in various classes. Instead, she continues to jump to the conclusion that since she arguably could have been reasonably accommodated, she is entitled to prevail on her ADA claim.[3] Her experts can offer no testimony in support of her claimed MCS. Therefore, she has no evidence regarding her minimal computer usage. Thus, she has failed to show how minimal computer usage constitutes a significant barrier to employment in the social work and probation fields. Further, she has failed to provide any evidence from surrounding counties or social service organizations which would support her contention that she is barred from a broad range of jobs. Plaintiff also admits that she sought reassignment to and applied for other positions with Hennepin County. This suggests that Plaintiff considers herself able to perform work other than in her previous position, and that she is therefore not disabled from the major life activity of work. Accordingly, Plaintiff fails to come within the definition of "disability" under § 12102(2)(A).

### 2.42 U.S.C. § 12102(2)(C)

Section 12102(2)(C) defines "disability" under the ADA as when an individual is regarded as having such an impairment that substantially limits one or more of the major life activities of such individual. *See* 42 U.S.C. § 12102(2)(C). Plaintiff insists that because the County was more than "generally aware" of her condition, the County regarded her as having a disability. Therefore, she argues that she fits within the definition of subsection C under the ADA. This argument must fail for at least two reasons.

■■■ First, the Court need not address this issue because Plaintiff failed to plead this theory in her Complaint; therefore, Defendants are prejudiced because of lack of notice of the claim. *See Pulla v. Amoco Oil Co.,* 72 F.3d 648, 658 (8th Cir.1995) (citing *Smith v. St. Bernards Regional Medical Center,* 19 F.3d 1254, 1255 (8th Cir.1994)). However, even assuming proper notice was made, the claim would fail because Plaintiff fails to show any evidence that she was terminated *because she was regarded as dis-*

---

**2.** The following factors may also be considered:
 (A) The geographical area to which the individual has reasonable access;
 (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
 (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).
29 C.F.R. § 1630.20(3)(ii).

**3.** Plaintiff continually asserts that Defendants are liable because they did not reasonably accommodate her disability. However, the issue of reasonable accommodation, through reassignment or otherwise, does not arise if Plaintiff does not suffer form an impairment which "substantially limits one or more of the major life activities" as provided in 42 U.S.C. § 12102(2).

*abled.* "The focus [of subsection C] is on the impairment's effect upon the attitudes of others.... [It] is intended to combat the effects of 'archaic attitudes,' erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995) (quoting *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 279–85, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)).

In the present case, Plaintiff merely asserts that the County knew of her disability because she took medical leave and because she discussed the January job offer with her doctor. However, as the Eighth Circuit held in *Aucutt* the mere fact that the employer had knowledge of the employee's medical problems does not show that the employer regarded the employee as disabled. *See Aucutt,* 85 F.3d at 1319 (basing its decision on an analysis of § 12102(2)(C)). The Court finds that Plaintiff has failed to put forth any evidence to show how Defendants perceived her upon her termination. *See Wooten,* 58 F.3d 382. Accordingly, the Court finds Plaintiff has failed to meet the necessary burden of proof and thus does not fall within the purview of § 12102(2)(C).

Plaintiff has failed to fall within the definition of disability under § 12102(2)(A) and 12102(2)(C). Because the Federal Rehabilitation Act ("FRA") and Minnesota Human Right Act ("MHRA") claims also require a threshold showing of disablement, the Court also grants Defendants' motion for summary judgment on those claims.

**D. Section 1983**

Plaintiff alleges a violation of her Fourteenth Amendment right to equal protection under 42 U.S.C. § 1983. Defendants move for summary judgment on this claim arguing that "there was no clear violation of Plaintiff's rights under ... the federal equal protection clause." (Defs.' Mot. for Summ. Judg. ¶ 3.) Under the Equal Protection Clause, "[n]n state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause requires that all persons similarly situated be treated alike under the law. *See Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72

L.Ed.2d 786 (1982); In re *Harhut,* 385 N.W.2d 305, 310 (Minn.1986).

The Court first notes that a disability discrimination claim is subject to rational basis analysis. *See City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The Court further notes that the Eleventh Circuit has held that "a plaintiff may not maintain a § 1983 action in lieu of—or in addition to—a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA." *Holbrook v. City of Alpharetta, Ga.,* 112 F.3d 1522, 1531 (11th Cir.1997); *see also Wallin v. Minnesota Dept. of Corrections,* 974 F.Supp. 1234, 1244 (D.Minn. 1997). "To permit a plaintiff to sue both under the [Rehabilitation Act and the ADA] that set forth detailed administrative avenues of redress as well as § 1983 would be duplicative at best; in effect, such a holding would provide the plaintiff with two bites at precisely the same apple." *Wallin,* 974 F.Supp. at 1244 (quoting *Holbrook,* 112 F.3d at 1531).

In the instant case, Plaintiff asserts that her right to equal protection was violated when Defendants allegedly unlawfully terminated her. (*See* Compl. ¶ 92.) As such, the Court determines that the issues involved in Plaintiff's equal protection claim are sufficiently similar to the issues involved in Plaintiff's ADA and FRA claims. Plaintiff, however, argues that her claim is "not limited to the ADA and Rehabilitation Act," (Pl.'s Mem. Opp'n at 28), and then proceeds to delineate the various other counts of her complaint, specifically noting state law claims, which she asserts force her to fall outside the *Holbrook* holding. The Court is not persuaded by this argument. Plaintiff misunderstands the rationale behind *Holbrook.* The *Holbrook* court discussed the repetitiveness of § 1983 claims when the issues presented in those claims mirror the issues presented under the ADA and FRA claims. In this case, Plaintiff has specifically stated that she brings this § 1983 action because of the "unlawful termination," which involves issues highly relevant to the ADA claim. Plaintiff's claims under § 1983 are based upon the same alleged injuries as her ERA and ADA claims and do not

appear to add anything to Plaintiff's substantive rights under the statutes. Thus, the Court concludes that Plaintiff is not entitled to relief under § 1983.

 The Court further notes that Plaintiff has failed to make a prima facie showing of an equal protection claim. Importantly, Plaintiff must make a threshold showing that she is similarly situated to those who allegedly received favorable treatment *See Klinger v. Department of Corrections* 31 F.3d 727, 731 (8th Cir.1994) ("[T]he first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her."). If a plaintiff fails to show that she is similarly situated to those who allegedly received favorable treatment, she does not have a viable equal protection claim. *Id.* Importantly, different treatment of "dissimilarly situated persons does not violate equal protection." *Id.*

In this case, Plaintiff fails to produce any evidence and, in fact, fails to allege that she was treated differently then other county employees on medical leave. Nothing in the record tends to show that Plaintiff was singled out for unusual treatment. Because Plaintiff has not come forward with any evidence that would permit the above inference, she has failed to establish the first step of a viable equal protection claim. Accordingly, the Court grants Defendants' summary judgment motion on this issue.

### E. Retaliation

 Plaintiff alleges that Defendants retaliated against her because she appealed her termination and brought charges of discrimination against Defendants asserting violations of 42 U.S.C. § 12203, 29 U.S.C. § 794(d), and Minn.Stat. § 363.03, subd. 7. As the plaintiff carries the burden to show retaliation, she must establish the following elements: (1) that she engaged in statutorily protected activity; (2) an adverse employment action occurred; and (3) the adverse employment action was causally linked to the protected activity. *See Kiel v. Select Artificials, Inc.* 142 F.3d 1077, 1080 (8th Cir.1998); *Meester v. Runyon,* 149 F.3d 855, No. 97–580, 1998 WL 394915 (8th Cir. July 16, 1998); *Hubbard v. United Press Int'l. Inc.,* 330

N.W.2d 428, 444 (Minn.1983). Upon a showing of a prima facie case,the burden then shifts to the employer to show that a nondiscriminatory reason existed for the employment actions, thus rebutting the presumption of retaliation. *See Kiel,* 142 F.3d at 1080. In this case, Defendants need not rebut Plaintiff's claim because she fails to make a prima facie case of retaliation. The Court focuses on the third prong of the test. Plaintiff merely asserts that Defendants' adverse employment action was their failure to hire her for a position after she filed an EEOC charge. Although in some cases, this kind of action could be evidence of retaliation, here, Plaintiff cannot show that the failure to hire her was caused by the EEOC complaint. The evidence shows that Plaintiff had been interviewed and not been hired for two positions before she filed the EEOC complaint. (Defs.' Ex. 104, ¶ 17; 113, 124.) Further, the evidence shows that after her termination with the County, Plaintiff interviewed for various jobs outside the County, but was not hired for those positions because more qualified candidates were selected. (Defs.' Ex. 99, 100, 102, 104–05, 108, 109, 112, 113.) Based on the evidence, the Court finds that Plaintiff has not shown that the County's failure to hire her was caused by her filing an EEOC complaint.

### F. State Law Claims

 The remaining claims in Plaintiff's Complaint are all based upon state law. Under 28 U.S.C. § 1367, federal courts may assert supplemental jurisdiction over state claims when a federal claim is properly before the court. However, when all federal claims have been dismissed, the court has discretion to dismiss the state claims as well. *See Carnegie–Mellon University v. Cohill* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Willman v. Heartland Hosp. E.,* 34 F.3d 605, 613 (8th Cir.1994). Because this Court grants Defendants' Motion for Summary Judgment on all of plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Counts III–VI. *See* 28 U.S.C. § 1367(c)(3). Therefore, Plaintiff's state claims are dismissed without prejudice.

## CONCLUSION

The Court grants Defendants' motion for summary judgment on Plaintiff's ADA, Federal Rehabilitation Act, and MHRA claims because Plaintiff is unable to show that she fits within the definition of disabled under the 42 U.S.C. § 12102(2). Defendants' motion for summary judgment is also granted as to Plaintiff's equal protection claim because Plaintiff has not put forth any evidence that she was treated differently than a similarly situated county employee. In addition, the Court dismisses Plaintiffs retaliation claim because she has failed to show the proper causal nexus. Finally, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion in Limine to Exclude Expert Testimony (Clerk Doc. No. 59) is GRANTED IN PART and DENIED IN PART;

2. The Court excludes any expert testimony regarding Multiple Chemical Sensitivities. However, lay witness testimony regarding the same will be considered;

3. Defendants' Motion for Summary Judgment (Clerk Doc. Nos. 64, 72) is GRANTED;

4. Count I, Violation of American With Disabilities Act, Rehabilitation Act, and Minnesota Human Rights Act; Count II, Reprisal and Retaliation; Count V, Respondeat Superior regarding all federal claims; and Count VIII, Violation of Equal Protection of Plaintiff Carol Coffey's Amended Complaint (Clerk Doe. No. 3) are DISMISSED WITH PREJUDICE;

5. Count III, Negligent Supervision, Negligent Training, Negligent Retention and Negligent Hiring; Count IV, Aiding and Abetting; Count V, Respondeat Superior regarding all state law claims; and Count VI, Breach of Contract of Plaintiff Carol Coffey's Complaint (Clerk Doc. No. 3) are DISMISSED WITHOUT PREJUDICE; and 6. Plaintiff Carol Coffey's Amended Complaint (Clerk Doc. No. 3) is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.